584

Capital Blue Cross, Petitioner *v.* Commonwealth of Pennsylvania, Insurance Department, Respondent.

Blue Cross of Western Pennsylvania, Petitioner *v.* Commonwealth of Pennsylvania, Insurance Department, Respondent.

Blue Cross of Lehigh Valley, Petitioner *v.* Commonwealth of Pennsylvania, Insurance Department, Respondent.

Argued January 31, 1978, before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Rogers, Blatt and DiSalle. Judge Mencer did not participate.

*Rod J. Pera,* with him *McNees, Wallace & Nurick,* for petitioner, Capital Blue Cross.

*Edward L. Springer,* with him *Springer & Perry,* for petitioner, Blue Cross of Western Pennsylvania.

*J. Jackson Eaton, III,* with him *Robert G. Tallman,* and *Butz, Hudders & Tallman,* for petitioner, Blue Cross of Lehigh Valley.

*John H. Isom,* Assistant Attorney General, with him *Robert P. Kane,* Attorney General, for respondent.

Opinion by Judge DiSalle, April 4, 1978:

These are petitions for review brought by Capital Blue Cross (Capital), Blue Cross of Western Pennsylvania (Western), and Blue Cross of Lehigh Valley (Lehigh) from the Order and Adjudication of the Insurance Commissioner of the Commonwealth of Penn-

sylvania (Commissioner), William G. Sheppard, dated June 10, 1977, and docketed at Docket No. R77-1-2, in which the requested rate increases for an insurance plan, referred to as "65-Special" Agreements, were disapproved.

The "65-Special" Agreement, as approved by the Department of Insurance, provides coverage to subscribers over age 65, and complements the Federal Medicare Program for such persons age 65 or over by paying on their behalf of the hospital in-patient and out-patient deductible and co-insurance amounts not covered byMedicare. Certain additional benefits not included in Medicare coverage, are also provided. As originally approved by the Department of Insurance, the "65-Special" Agreement was a financially self-sustaining contract.

The requested rate increases that are presently before this Court were based primarily on the increase in the Medicare deductible announced by the U.S. Seccretary of Health, Education and Welfare on September 30, 1976. The requests were as follows: Capital, on October 21, 1976, requested a rate increase from $4.30 to $5.00 per subscriber per month; Western, on September 16, 1976, as subsequently amended on October 25, 1976, requested a rate increase from $5.30 to $7.05 per subscriber per month; and Lehigh, on October 25, 1976, requested a rate increase from $4.25 to $5.00 per subscriber per month. A public informational hearing concerning the "65-Special" filings were held on November 15, 1976, by the Pennsylvania Insurance Department. Thereafter, on December 14, 1976, the Commissioner notified Capital, Western, and Lehigh that the rate applications were disapproved and that each filer had a right to a formal hearing to be held in accordance with the Administrative Agency Law, Act of June 4, 1945, P.L. 1388, *as amended*, 71 P.S. §1710.1 et seq. An administrative hearing was

held on February 2, 3 and 4, 1977. On June 10, 1977, the Commissioner disapproved the rate filings, stating in his Adjudication that the proposed filings did not meet the requirements for approval pursuant to 40 Pa. C.S. §6124(a) since they did not contain a factor for community rating.

These petitions for review were thereupon filed. Notwithstanding the denial by this Court of the Insurance Department's motion for consolidation by Order dated July 28, 1977, since the issues and applicable law are substantially identical, we will consider the 3 petitions together.

Section 6124(a), referred to by the Commissioner states, *inter alia*:

The rates charged to subscribers by hospital plan corporations, . . . shall, at all times, be subject to the prior approval of the department.

As indicated by Sections 6124(b) and 6102(f), orders of the department are subject to judicial review as provided by law. Section 51(a)(3) of the Administrative Agency Law, 71 P.S. §1710.51(a)(3), enumerates the Insurance Department as one of those agencies to which the provisions of the Act apply. Disposition of appeals from the department, and the scope of review to be applied, is governed by Section 44, 71 P.S. §1710.44, which states:

The court to which the appeal is taken shall hear the appeal without a jury on the record certified by the agency. After hearing, the court shall affirm the adjudication unless it shall find that the same is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of sections thirty-one to thirty-five inclusive of this act [71 P.S. §§1710.31-1710.35] have been violated in the proceeding before the agency, or that any finding of fact made by the agency

and necessary to support its adjudication is not supported by substantial evidence. If the adjudication is not affirmed, the court may set aside or modify it, in whole, or in part, or may remand the proceeding to the agency for further disposition in accordance with the order of this court.

Furthermore, we had the opportunity in *Nationwide Mutual Insurance Co. v. Denenberg*, 15 Pa. Commonwealth Ct. 24, 324 A.2d 878 (1974), and subsequently in *Insurance Department v. Saint Lukes Hospital*, 21 Pa. Commonwealth Ct. 10, 342 A.2d 773 (1975), and *Insurance Department v. Pennsylvania Coal Mining Association*, 26 Pa. Commonwealth Ct. 348, 363 A.2d 823 (1976), to adopt a scope of review on appeals from rate filing cases. The standard is that unless the record clearly establishes a violation of positive law or an arbitrary, capricious or unreasonable determination due to the absence of substantial evidence to support the findings, the court will not interfere. *See also Blumenschein v. Pittsburgh Housing Authority*, 379 Pa. 566, 109 A.2d 331 (1954).

In this case, Capital, Western, and Lehigh allege that the Commissioner committed a violation of positive law when he ignored the stipulations that the proposed rates were supported by accurate actuarial projections and required them to subsidize a certain portion of its subscribers at the expense of others. Alternatively, it is argued that the decision of the Commissioner is without directives sufficient to enable them to file a rate which will comply with the Commissioner's request. An argument based on a lack of substantial evidence to support the Commissioner's finding is also propounded.[1]

---

[1] Additionally, Western advances the argument that the Insurance Department's action in disapproving the rate application un-

At this juncture, it would be appropriate to consider the reasons advanced by the Commissioner in his Adjudication for not relying solely on the actuarial projections. He stated therein:

> The contention here is that the Department is without authority to look behind the actuarial assumptions and compel the Plans to include another factor that was not considered in the calculation and that by so doing the Department is trying to act in a 'super' managerial capacity and substitute its judgment for that of the Board of Directors. . . .

> It has been stipulated that the proposed rates are supported by accurate actuarial data. This is true. But suggesting that the Department must accept a rate merely because it is actuarily justified on its face overlooks the important fact that an actuarial projection is only as accurate as the assumptions on which it is based.

> Therefore holding that the Department must not look at the assumptions upon which the rates were promulgated would force the approval of rates which possibly might be inherently unfair since the review would be limited only to that material which the carrier elected to submit. This situation would be absurd since it would provide no protection for the public in that in effect the Department would be reduced to a mere rubber stamp or checker of arithmetic. This, then, is not a question of the Department trying to assume managerial prerogatives by forcing the adoption of a regulation or guide-

---

constitutionally deprives them of property without due process of law. This contention lacks merit and will not be considered.

lines, but merely a refusal to approve a filing because there is a factor missing from the actuarial projection which must be considered for the rate to be equitable.

The rationale of the Commissioner appears sound. The disapproval of the requested rate increases based on the failure to include a factor for community rating does not overstep his authority to approve or disapprove rate plans. To decide otherwise would so severely limit the powers of the Commissioner that he would become, in effect, merely a "rubber stamp."

We are not unmindful of Judge WOODSIDE's observation in *Pennsylvania Insurance Department v. Philadelphia,* 196 Pa. Superior Ct. 221, 173 A.2d 811 (1961), when commenting on the area of rate making he stated: "Insurance rate making is a technical, complicated and involved procedure carried on by trained men. It is not an exact science. Judgment based on a thorough knowledge of the problem must be applied. Courts cannot abdicate their duty to examine the evidence and the adjudication, and to interpret and apply the law, but they must recognize the value of the judgment of an Insurance Commissioner who is specializing in the field of insurance and the efficacy of an adjudication supported by evidence of experts who devoted a lifetime of service to rate making." 196 Pa. Superior Ct. at 237-38, 173 A.2d at 819.

The instant case is strikingly similar to *Insurance Department v. Saint Lukes Hospital, supra.* In that case the Insurance Department's refusal to approve a reimbursement contract between the Hospital Service Plan of Lehigh Valley (Blue Cross) and its contracting hospitals was affirmed where the proposed contract provided that Blue Cross would pay the cost of collection from its subscribers relating to charges which were subsequently disallowed, did not contain

a provision requiring submission of hospital budgets to Blue Cross, did not contain a reasonable ceiling cost, and provided no incentive for hospitals to remove expensive and unused beds from service. The failure to include certain provisions in that proposed contract, like the failure to include a subsidy provision in the present rate increase request, was deemed fatal since, by their absence, the proposals were rendered inequitable. The disapproval of a requested rate increase on the basis of a failure to include a factor which in the opinion of the Commissioner is necessary, when the absence of such a factor renders the proposal inequitable, is within his authority.

It is argued that even if the disapproval of the "65-Special" Agreements is upheld as being within the authority of the Commissioner, as we believe it is, the Commissioner nevertheless was remiss in failing to set forth sufficient guidelines to aid the filers in the resubmission of their requests. It is true that the Commissioner must do more than merely find fault with the rate filing so as to permit its disapproval; he must specify those deficiencies in the rate filing with enough particularity to give the parties some guidelines for future or amended filings. *Denenberg, supra,* 15 Pa. Commonwealth Ct. at 33, 324 A.2d at 882. The arguments of Capital, Western and Lehigh to the contrary, this the Commissioner has done. His Adjudication stated:

> Quite a bit of testimony was presented with respect to where a subsidy could come from . . . , the . . . , special status of the plans and the problems a subsidy might create. Although interesting, this testimony did not provide specific actuarial projections which could be tested for reasonableness or even sufficient data from which to establish reasonable parameters for the subsidy factor. Because of this, the Depart-

ment can offer no better guidelines than to state that the factor must be considered. It should be noted, however, that the Department recently approved the 65-Special Filing No. 4-W-1976, Part II, as amended, for Pennsylvania Blue Shield. This filing included a factor for community rating which resulted in a rate 2 percent lower than it otherwise would have been.

Although cognizant of his obligation to provide guidelines, the absence of relevant data forced him to merely suggest an approved model to follow. His duty is neither to rewrite the rate increases for the filers, nor to set rates himself. The Commissioner has fulfilled his obligation; he could have done little more.

The next major contention of Capital, Western, and Lehigh is that given the accuracy of actuarial projections in support of their filings, the Commissioner's disapproval was not supported by substantial evidence. This contention once again presupposes the inability of the Commissioner to look behind the actuarial projections to question the assumptions on which they are based. As previously noted, this position is fallacious. Testimony was presented on many aspects of the "65-Special" Agreements, on health care and financial needs of those persons over 65 years of age, on the effects and practicability of community rating systems to the present filers, those similarly situated, and to their subscribers, on the advantages these filers have over private, commercial carriers, and on any number of related matters. We cannot determine that the Commissioner's decision was based on unsubstantial evidence.

Having thus concluded that the Commissioner did not violate any precept of positive law or act in an arbitrary, capricious or unreasonable manner in reaching his decision, we therefore affirm.

## ORDER IN 1268 C.D. 1977

AND Now, this 4th day of April, 1978, the Insurance Commissioner's order refusing to approve the requested rate increases of Capital Blue Cross (Filing No. 76-1) for the "65-Special" Plan is hereby affirmed.

## ORDER IN 1281 C.D. 1977

AND Now, this 4th day of April, 1978, the Insurance Commissioner's order refusing to approve the requested rate increases of Blue Cross of Western Pennsylvania (Filing No. 1-HSA-1966) for the "65-Special" Plan is hereby affirmed.

## ORDER IN 1323 C.D. 1977

AND Now, this 4th day of April, 1978, the Insurance Commissioner's order refusing to approve the requested rate increases of Blue Cross of Lehigh Valley (Filing No. 7-V-76) for the "65-Special" Plan is hereby affirmed.

---

DISSENTING OPINION BY PRESIDENT JUDGE BOWMAN:

I dissent. In my opinion, the Insurance Commissioner in the exercise of his authority to approve rates cannot, through its exercise, dictate the application of a socioeconomic theory upon the rate submission and approval process no matter how appealing such a theory may be to those who would benefit by it or to the public at large. To hold otherwise assumes that the Commissioner enjoys superior knowledge and expertise to that of petitioners as to the present and future impact of subsidization of one group of subscribers by another group or groups upon the financial condition and trends of petitioners, the marketability of coverages subsidizing other coverages and the entire spectrum of the decision-making process properly left to these nonprofit corporations. It also

assumes that the Commissioner enjoys an omnipotence superior to all, that a particular socioeconomic theory is valid and not subject to difference of opinion. The record in these cases can support no other conclusion, as it is totally devoid of evidence that would support a rationale for his action.

In many respects, his action in these cases is not unlike that taken and disapproved by me in my dissenting opinion in *Insurance Department v. Saint Lukes Hospital*, 21 Pa. Commonwealth Ct. 10, 342 A.2d 773 (1975).