John Nagle et al., Petitioners *v.* Commonwealth of Pennsylvania, Insurance Department ex rel. William J. Sheppard, Insurance Commissioner, Respondent.

Argued October 2, 1979, before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Rogers, Blatt, DiSalle and MacPhail. Judges Mencer and Craig did not participate.

*Leonard Schaeffer,* with him *James D. Rosen, Pechner, Dorfman, Wolffe, Rounick & Cabot,* for petitioners.

*David T. Kluz,* Assistant Attorney General, with him *John H. Isom,* Assistant Attorney General and *Robert P. Kane,* Attorney General, for respondent.

OPINION BY PRESIDENT JUDGE BOWMAN, January 4, 1980:

Petitioners here are three individuals, a corporation and a coal haulers association (Petitioners) who have filed a petition for review of an August 10, 1977 order of the Insurance Commissioner (Commissioner) which failed to grant part of the relief they sought in challenging a prior approved insurance premium rate classification. The facts are not in dispute.

Pursuant to changes brought about by the Black Lung Benefits Act, 30 U.S.C. §901 *et seq.,* and amendments to The Pennsylvania Workmen's Compensation Act[1] by Act of December 6, 1972, P.L. 1627, 77 P.S. §27.1(q), the Insurance Department in 1973 approved a rate schedule filed by the Coal Mine Compensation Rating Bureau of Pennsylvania (Bureau)[2] for coal

---

[1] Section 108 of the Act of June 2, 1915, P.L. 736, *as amended,* added by the Act of October 17, 1972, P.L. 930, *as amended.*

[2] The Bureau is a statistical and rating association approved by the Insurance Commissioner pursuant to Section 654 of The Insurance Company Law of 1921 (Insurance Company Law), Act of May 17, 1921, P.L. 682, *as amended,* 40 P.S. §814.

mine occupational disease insurance which for classification purposes included within black lung coverage non-mining employees such as Petitioners' truck drivers who haul coal exclusively from coal mines and tipples and which applied to the employers of such non-mining truck drivers the same rate paid by employers of surface miners.[3]

By complaint filed with the Insurance Department on August 4, 1976, Petitioners challenged the Commissioner's approval of the Bureau's classification.[4] After an evidentiary hearing and the submission of briefs, the Commissioner, by order of February 7, 1977 (1) withdrew approval of the rate plan and classification system for Petitioners and other trucking companies

---

[3] The first filing, approved for the July 1973-June 1974 premium year, provided for a composite federal and state black lung rate of $13.09 per $100.00 of payroll.

[4] Petitioners, their attorneys and others similarly situated also instituted related suits addressed to our original jurisdiction in which they sought (1) damages in trespass for negligence against, among others, the Pennsylvania Insurance Department, its Commissioner, the State Workmen's Compensation Fund, and, its Board, for improper rate classification, (2) equitable relief in the nature of an accounting of all premiums paid between 1973 and 1977 in excess of the rate approved by the Commissioner in his June 29, 1977 order, and (3) counsel fees. We disposed of these various claims in *Nagle v. Pennsylvania Insurance Department*, 46 Pa. Commonwealth Ct. 621, 406 A.2d 1229 (1979), and *Pechner, Dorfman, Wolffe, Rounick & Cabot v. Insurance Department ex rel. Sheppard*, 46 Pa. Commonwealth Ct. 641, 407 A.2d 100 (1979), wherein, in sustaining preliminary objections raised by the various respondents, we (1) dismissed on the basis of sovereign and official immunity the causes of action in trespass against the Commonwealth agencies and their officers and transferred to the appropriate court of common pleas as to other respondents, (2) dismissed for want of jurisdiction Petitioners' counts in equity on the ground that Petitioners were already pursuing an adequate remedy at law through the petition for review of the Commissioner's action at No. 1829 C.D. 1977, which is now presently before us, and (3) dismissed on the basis of the above mentioned findings Petitioners' attorneys' action for counsel fees.

whose employes haul coal exclusively from coal mines or tipples, (2) ordered continued payment of premiums by the trucking companies at "currently effective" rates,[5] (3) ordered insurers to hold in escrow premiums collected after February 7, 1977, (4) ordered the Bureau to reevaluate the rate classification of coal-hauling companies and to report to the Commissioner a new plan within 60 days, and (5) announced that the finally approved rating plan would be implemented retroactively from the date of final resolution of the matter to February 7, 1977.

On April 18, 1977, the Pennsylvania Compensation Rating Bureau, having assumed responsibility for reevaluating the rate classification from the Bureau,[6] formally filed with the Commissioner an occupational disease rate for coal haulers and truckers of $2.35, which rate was approved by the Commissioner on June 29, 1977.[7] On August 10, 1977, the Commissioner took the final step in implementing his February 7, 1977 order by ordering the Bureau's member insur-

---

[5] The existing rate would have been the 1975 rate of $27.00 per $100.00 payroll but for the decision of the Supreme Court in *Pennsylvania Coal Mining Association v. Insurance Department*, 471 Pa. 437, 370 A.2d 685 (1977), which ruled as unconstitutional the amendatory provisions of Section 654 allowing for "deemed" approval by the Commissioner of proposed rates. The rate remaining in effect, therefore, and being paid into escrow, was the 1974 rate, $18.54 per $100.00, itself a subject of appeal in *Insurance Department v. Pennsylvania Coal Mining Association*, 26 Pa. Commonwealth Ct. 348, 363 A.2d 823 (1976).

[6] Subsequent to the Commissioner's February 7, 1977 order, the Bureau informed the Commissioner that Petitioners should be assigned to a classification and rate under the jurisdiction of a single rating bureau, whereupon the Pennsylvania Compensation Rating Bureau agreed to recommend the classification and rate for coal haulers. This second Bureau complied with the Commissioner's 60-day order by submitting a preliminary recommendation on April 6, 1977.

[7] This rate represented a ninety percent reduction of Petitioners' workmen's compensation insurance coverage.

ers to refund to Petitioners and other affected coal haulers all premiums in excess of $2.35 collected after February 7, 1977.

Petitioners here seek review of this August 10, 1977 refund order, asserting that the relief afforded therein is incomplete in that the Commissioner abused his discretion in failing to refund all premiums in excess of the newly determined $2.35 rate paid between 1973 and 1977. Specifically, Petitioners argue that since the record of the evidentiary hearing held by the Commissioner pursuant to their August 4, 1976 complaint indicates that neither the Bureau nor the Insurance Department had sufficient evidence to justify the placement of coal haulers within the same rate classification as surface miners for premium years 1973, 1974, 1975 and 1976, the premiums paid during those years in excess of $2.35 should have been ordered refunded. We cannot agree.

Our scope of review on appeals from final determinations of the Commissioner is prescribed by statute and case law. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704, provides general guidelines:

> The court shall hear the appeal without a jury on the record certified by the Commonwealth agency. After hearing, the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter A of Chapter 5 (relating to practice and procedure of Commonwealth agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence.

A similar pronouncement more specifically geared to review on appeals from approved insurance rate filings was made by Judge WOODSIDE in *Pennsylvania Insurance Department v. Philadelphia,* 196 Pa. Superior Ct. 221, 237, 173 A.2d 811, 819 (1961):

Where an administrative agency is clothed with discretion in the discharge of its duty, the court will not interfere unless the record clearly establishes that there has been a violation of positive law or an arbitrary, capricious or unreasonable determination due to the absence of substantial evidence to support the findings. (Citations omitted.)

. . . It is true that mere possession of discretionary power by an administrative body does not make it wholly immune from judicial review, but the scope of that review is limited to the determination of whether there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions. That the court might have a different opinion or judgment in regard to the action of the agency is not a sufficient ground for interference; judicial discretion may not be substituted for administrative discretion.

We have adopted this standard in our own review of appeals from decisions of the Commissioner. *Capital Blue Cross v. Insurance Department,* 34 Pa. Commonwealth Ct. 584, 383 A.2d 1306 (1978); *Insurance Department v. Pennsylvania Coal Mining Association,* 26 Pa. Commonwealth Ct. 348, 363 A.2d 823 (1976); *Nationwide Mutual Insurance Co. v. Denenberg,* 15 Pa. Commonwealth Ct. 24, 324 A.2d 878 (1974). Although these cases involve appeals from the Commissioner's approval or disapproval of rate filings, the scope of review they espouse is equally applicable here where Petitioners challenge the Commissioner's refusal to order retroactive refunds pursuant to his withdrawal

of approval of then current rates and subsequent approval of a rate substantially lower than the rate on which approval was withdrawn.

Reviewing the action of the Commissioner in light of this standard, we conclude that he did not abuse his discretion in failing to order retroactive refunds.

Petitioners cite no authority, and we can find none, to support their position that the Commissioner is required to order retroactive refunds of premiums paid where the rate at which such premiums were calculated is subsequently reduced. Unlike, for example, the Public Utility Code, wherein the legislature provided specifically for refunds to ratepayers in cases in which the commission determines that a rate received by a utility is unjust or unreasonable,[8] the Insurance Company Law, 40 P.S. §341 *et seq.*, imposes no similar power or duty upon the Commissioner where insurance rates are challenged as excessive. To the contrary, Section 654 of the Insurance Company Law, 40 P.S. §814, which provides that the Commissioner "may withdraw his approval whenever, in his judgment, the [rate] is inadequate or discriminates unfairly between risks of essentially the same hazard," is silent as to any requirement that premiums, even where based on a rate that "discriminates unfairly," must be ordered refunded.

Further, Petitioners' argument in this regard is premised upon the presumption that evidence produced at the hearing below proves conclusively that the rate in effect on February 7, 1977, from which the Commissioner withdrew his approval, was unfairly discriminatory. As the Commissioner found in his February 7, 1977 order, Petitioners' evidence does not support such a conclusion. While it is clear from the record and acknowledged by the Commissioner that the Bureau did not document adequately its initial de-

---

[8] *See* Section 1312 of the Public Utility Code, 66 Pa. C.S. §1312.

cisions to include coal haulers within the ambit of federal and state black lung coverage and to set their rates equal to those of surface miners, it is equally clear that there is no evidence that the initial classification and rate were patently erroneous or unsupported by information then available regarding the relationship of black lung to the coal-hauling industry. That these issues were at least arguable is indicated by the fact that Petitioners were unable to persuade the Commissioner on the record of the hearing below that coal haulers were improperly included or improperly classified as of 1976.

Of even greater significance in this regard is that Petitioners waited until August 4, 1976, to properly challenge a classification and rate schedule first approved in 1973.[9] Under the applicable statute, Section 654 of the Insurance Company Law, 40 P.S. §814, they could have challenged the Commissioner's approval of the Board's inclusion of coal haulers in black lung coverage and classification of coal haulers along with surface miners as soon as such approval was granted in 1973.[10] Although Petitioners' three year acquiescence in an insurance rate subsequently challenged as excessive has no legal significance vis-a-vis the

---

[9] The issue Petitioners here raise was first raised in *Insurance Department v. Pennsylvania Coal Mining Association, supra* note 4 at 350, 363 A.2d at 825, but was not considered by this Court because it was not raised before the Commissioner.

[10] Section 654 provides pertinently as follows:

The classification of risks, underwriting rules, premium rates and schedule or merit rating plans for insurance of employers and employes under such acts, shall be filed with, and shall be subject to review by the Insurance Commissioner, and the Insurance Commissioner shall by order modify, amend or approve the same. *Any person, corporate or otherwise, aggrieved by such order, classification, rule, rate or schedule issued by the Insurance Commissioner may obtain a review thereof before the Insurance Commissioner.* (Emphasis added.)

prospective propriety of that rate, it was properly considered by the Commissioner in determining the extent to which Petitioners should be afforded retroactive relief.

On the facts presented here, it is evident that the rate challenged by Petitioners remained "approved" and in effect until February 7, 1977, when the Commissioner entered an order "withdrawing approval" of the rate and ordering an investigation. Thus, the relief afforded Petitioners in the final order of August 10, 1977, the ordering of retroactive refunds to the exent that "excessive" premiums were paid into escrow accounts subsequent to and pursuant to the February 7, 1977 order, is adequate, and the Commissioner's refusal to grant relief beyond that date to 1973 does not constitute an abuse of discretion.

ORDER

Now, January 4, 1980, the Insurance Commissioner's order directing payment by members of the Coal Mine Compensation Rating Bureau of Pennsylvania of premiums paid by coal haulers between February 7, 1977 and August 10, 1977, in excess of $2.35, but failing to direct refund of premiums paid prior to February 7, 1977, is hereby affirmed.