Pennsylvania Assigned Claims Plan, Petitioner *v.* Insurance Commission of The Commonwealth of Pennsylvania, Respondent.

Argued May 6, 1980, before President Judge CRUMLISH and Judges WILKINSON, JR., MENCER, ROGERS, BLATT, CRAIG and WILLIAMS, JR. Judge MACPHAIL did not participate.

*John M. Fitzpatrick*, with him *Jeffrey A. Less*, and *Raphael A. Porrata-Doria*, of counsel, *Dilworth, Paxson, Kalish, Levy & Kauffman*, for petitioner.

*James R. Farley,* Assistant Attorney General, with him *Beth C. Sheligo,* Assistant Attorney General, and *Edward G. Biester, Jr.,* Attorney General, for respondent.

OPINION BY PRESIDENT JUDGE CRUMLISH, September 26, 1980:

The Pennsylvania Assigned Claims Plan (Plan) seeks review of the Insurance Commissioner's (Commissioner) order requiring it to pay the basic loss benefit claims that Safeguard Mutual Insurance Company would be legally obligated to provide claimants under the Pennsylvania No-Fault Motor Vehicle Insurance Act.[1] We affirm.

On May 29, 1979, the Commissioner suspended Safeguard's operation of business based on an insolvent financial condition which could prove harmful to both policyholders and the general public.[2] The suspension prohibited the issuance of policies, the transfers of property, and the payment of monies and claims without his prior written approval.

On November 30, 1979, the Commissioner ordered the Plan to promptly provide those legally obligated basic loss benefits covered by the No-Fault law. The adjudication found authority in Section 108(a)(1)(D) and (E), 40 P.S. §1009.108(a)(1)(D) and (E), which provide in pertinent part:

---

[1] Act of July 19, 1974, P.L. 489, *as amended,* 40 P.S. §§1009.101 et seq., effective July 19, 1975. Basic loss benefits are provided by the No-Fault Act for net loss sustained by a victim, exclusive of property damage, and synonomous with personal injury protection (PIP) claims for the purposes of this matter. *See* 40 P.S. §1009.103.

[2] Suspension was made in accordance with Article V of the Insurance Department Act of 1921, Act of May 17, 1921, P.L. 789, added by Act of December 14, 1977, P.L. 280, *as amended,* 40 P.S. §§221.1 et seq., and based upon the finding that Safeguard's liabilities exceeded assets by $5,629,519 as of December 31, 1977.

(a) General.—

(1) ... [A] victim or the survivor or survivors of a deceased victim may obtain basic benefits through the assigned claims plan ... if basic loss insurance:

. . . .

(D) applicable to the injury is inadequate to provide the contracted-for benefits because of financial inability of an obligor to fulfill its obligations; or

(E) benefits are refused by an obligor for a reason other than that the individual is not entitled in accordance with this act to receive the basic loss benefits claimed.

The Commissioner determined that the May 29, 1979 suspension order, not a final judicial determination of insolvency in a liquidation proceeding before this Court, was adequate and proper to invoke Section 108(a)(1)(D)'s "financial inability" clause. In addition, the Commissioner found that Safeguard's refusal to pay legally entitled claimants because of the Suspension Order was based on financial condition, not on the lack of merit of such claims as provided by Section 108(a)(1)(E). This appeal followed the decision ordering payment by the Plan under the No-Fault Act.

Procedurally, the Plan argues that Safeguard is both an indispensable and necessary party to the present proceeding. We disagree. An indispensable party is one whose rights are so connected with the claims of the litigants that no decree or order can be made without impairing those rights. *Action Coalition of Elders v. Allegheny County Institution District,* 44 Pa. Commonwealth Ct. 356, 360, 403 A.2d 1357, 1360 (1979). On the other hand, a necessary party is one " 'whose presence, while not indispensable, is essential if the court is to completely resolve the controversy before it and render complete relief.' " *Action Coali-*

*tion of Elders v. Allegheny County Institution District, supra* at 361, 403 A.2d at 1360, citing *County of Allegheny v. Department of Public Welfare,* 31 Pa. Commonwealth Ct. 379, 382, 376 A.2d 290, 292 (1977). The purpose of the present litigation is not to review the Commissioner's May 29, 1979 Suspension Order or adjudicate Safeguard's financial condition, but to determine whether the Plan must pay the No-Fault claims of Safeguard policyholders and claimants as provided by the Act.[3] After careful review, we have determined that Safeguard's interests are clearly separable from those of the Plan and a determination can be made without the obligor's participation.

Initially, we must point out that the Commissioner's authority is broad and comprehensive. The power to suspend Safeguard operations based upon a finding of either insolvency or a hazardous financial condition is clearly written in Article V of the Insurance Department Act of 1921.[4] The Commissioner's concurrent "approval and regulation" powers under No-Fault Act Section 108(b), 40 P.S. §1009.108(b), provides an authoritative basis for supervision over the Assigned Claims Plan and its operation:

(b) Assigned claims plan.—

(1) Obligors other than self insurers and governments providing basic loss insurance in this Commonwealth shall organize and maintain, *subject to approval and regulation by the commissioner,* an assigned claims bureau and an assigned claims plan and adopt rules for their operation and for assessment of costs on a fair

---

[3] However, our decision today makes no attempt to reflect upon or influence that which is the subject of the Commissioner's May 29, 1979 application to this Court for Safeguard's dissolution and liquidation upon a judicial declaration of insolvency.

[4] *See* note 2, *infra,* and the Commissioner's summary authority at 40 P.S. §221.10.

and equitable basis consistent with this act. If such bureau and plan are not organized and maintained in a manner considered by the commissioner to be consistent with this act, he shall organize and maintain an assigned claims bureau and an assigned claims plan. (Emphasis added.)

To hold, as the Plan requests, that the Act does not authorize the Commissioner to compel payment of an insurer's claims[5] would allow the Plan to subvert the protective purpose of the assigned claims plan.[6] We must therefore determine whether the Commissioner mistook fact, erred in law or abused discretion by invoking the Plan's responsibility under the No-Fault Act.[7]

The Plan contends that the Commissioner's error was two-fold in its application of Section 108(a)(1)(D): First, the section contemplates a financial inability to meet *only* basic loss benefit claims, not *all* obligations, and the evidence indicates that Safeguard has sufficient liquid assets to meet these obligations; and second, the use of the term "financial inability" under the statute requires, at the least, a final judicial determination of insolvency as a prerequisite to activating the Plan's coverage. We find merit in neither argument.

The No-Fault Act's declared policy has always been the establishment of a statewide system of

---

[5] To our reading, Section 108(b), 40 P.S. §1009.108(b), is clear, and Section 106, 40 P.S. §1009.106, does not relegate victims or claimants to an exclusive procedure against the Plan, as the Plan argues, but only states that the Plan may be responsible, Section 106(a)(5), 40 P.S. §1009.106(a)(5), and that timely application must be made, Section 106(c)(4), 40 P.S. §1009.106(c)(4).

[6] *See* Section 102(b), 40 P.S. §1009.102(b).

[7] *See* Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704, and *Nagle v. Insurance Department ex rel. Sheppard*, 48 Pa. Commonwealth Ct. 295, 299, 409 A.2d 525, 527 (1980).

prompt and adequate payment of basic loss benefits for motor vehicle accident victims and the survivors of deceased victims. 40 P.S. §1009.102(b). This purpose is implemented by requiring that accident victims be paid benefits irrespective of fault through a compulsory first party insurance system in which the victim is to be paid for economic loss directly by his own insurer or by the company insuring the owner of the vehicle. To guarantee the effectiveness of this system, all obligor insurers, except self-insurers and governments, providing basic loss insurance were required to organize and maintain an Assigned Claims Plan and a Bureau for its administration. 40 P.S. §1009.108(b)(1). The Bureau's function is simply to assign no-fault benefit claims to participating insurers for handling in such a way as to minimize the inconvenience to those claimants. 40 P.S. §1009.108(b)(2). The Plan's eligibility provisions do nothing more than assure the prompt disposition of these claims by anticipating, for the purposes of this case, situations where the insurer either rejects a claim on non-merit grounds, 40 P.S. §1009.108(a)(1)(E), or is financially unable to fulfill its obligations, 40 P.S. §1009.108(a)(1)(D).

On the first issue, logic dictates that the test must be whether Safeguard can meet *all* of its claims and obligations, present or future, in the normal course of business. We find nothing to indicate that the No-Fault Act authorizes its claims to take preference over equally serious losses from its sister insurance sectors. The Act does not exist in a vacuum, cannot act in disharmony with other claims, and will not be made to operate against the public's best interest. As for the "financial inability" question, there is no reference in the statute to the term "insolvency" and certainly no indication that a final judicial determination of insolvency is necessary to the section's application. The insurer need only be financially unable to fulfill its

obligations. We conclude that the Commissioner's suspension of Safeguard's business on the grounds of insolvency and hazardous financial condition, made only after an extensive examination revealed irreparable harm was occurring to the interest of policyholders, creditors, and the public, was sufficient to invoke the Plan's responsibility. To hold otherwise and adopt either of the Plan's arguments would delay the payment of claims for several years, effectively leave accident victims without necessary insurance coverage, and surely defeat the legislative purpose of the No-Fault Act.[8]

The Plan's responsibility for policy coverage is even clearer upon a reading of The Pennsylvania Insurance Guaranty Association Act.[9] The mandated purpose of the Association is not only to "assist in the detection and prevention of insurer insolvencies," but "avoid financial loss to claimants or policyholders as a result of the insolvency of an insurer." 40 P.S. §1701.102. If an insurer is judicially determined insolvent, the Association would then be responsible for all property and casualty claims, including those arising from automobile accidents. See 40 P.S. §1701.201. Thus, the legislature must have intended the Plan to cover basic loss benefits claims under the No-Fault Act until the Association's authority was invoked by a judicial determination of insolvency.

The Plan also challenges the Commissioner's decision under Section 108(a)(1)(E) providing for payment when "benefits are refused by an obligor for a

---

[8] By the same token, the Plan incurs no injury or financial disability, since the Assigned Claims Bureau or any insurer to whom the claim is assigned is subrogated to all rights of the claim against the insurer legally obligated to provide the coverage. See 40 P.S. §1009.108(a)(2).

[9] Act of November 25, 1970, P.L. 716, as amended, 40 P.S. §§1701.101 et seq.

reason other than that the individual is not entitled
... to receive the basic loss benefits claimed.'' 40 P.S.
§1009.108(a)(1)(E). In essence, the Plan will provide
coverage where the carrier rejects a claim for some
non-meritorious reason, such as here, where financial
condition prevents the payment of claims. Though the
May 29, 1979 Suspension Order prevented Safeguard
from paying any claims, 40 P.S. §221.10(d), the Com-
missioner found that Safeguard steadfastly refused
to pay hardship cases even when specifically autho-
rized by the Department,[10] and concluded that these
actions required payment by the Plan. We agree with
the Commissioner's Section 108(a)(1)(E) interpre-
tation but with a modification. Only in those cases
where Safeguard has refused to pay without disputing
the validity of the claim and the Department has sub-
sequently authorized payment, may specific claimants
have rights against the Plan. Independent of the Sec-
tion 108(a)(1)(D) decision, the Commissioner cannot
simply order the Plan to pay all of Safeguard's claims
based on the rights intended by Section 108(a)(1)(E)
of the No-Fault Act. Accordingly, we

ORDER

The Insurance Commissioner's decision and order,
dated November 30, 1979, to be affirmed in its consid-
eration of Section 108(a)(1)(D), 40 P.S. §1009.108(a)
(1)(D), and affirmed with modification concerning
Section 108(a)(1)(E), 40 P.S. §1009.108(a)(1)(E), of
the Pennsylvania No-Fault Motor Vehicle Insurance

---

[10] In fact, we note with interest one specific hardship case in
which the Commissioner petitioned this Court ex parte for a special
injunction to force the payment of certain present and future medi-
cally related expenses to one Gary Zoellner for severe personal in-
juries suffered as a result of an April 16, 1978 automobile accident.
On July 20, 1979, the late President Judge BOWMAN ordered Safe-
guard to pay these bills upon the Commissioner's approval as of and
until such time as the suspension order would be vacated.

102

Act. The Assigned Claims Plan shall promptly provide the basic loss benefits that Safeguard Mutual Insurance Company would be legally obligated to provide its claimants under the No-Fault Act, but in no way inconsistent with this opinion.
Date: September 26, 1980