541 A.2d 393

Ann and Craig Bartholomew, on behalf of their son, Jonathan Bartholomew, and The League of Women Voters of Pennsylvania, on behalf of its members, Petitioners *v.* Constance B. Foster, in her official capacity as Commissioner of the Pennsylvania Insurance Department, Respondent.

Argued November 18, 1987, before President Judge CRUMLISH, JR., and Judges CRAIG, MACPHAIL, DOYLE, BARRY and COLINS.

*Deborah A. Ellis,* with her, *Isabelle Katz Pinzler,* American Civil Liberties Union/Women's Rights Pro-

ject, *Stefan Presser,* American Civil Liberties Union of Pennsylvania, and *Rita Bernstein,* Women's Law Project, for petitioners.

*Andrew S. Gordon,* Chief Deputy Attorney General, Chief, Litigation Section, and *LeRoy S. Zimmerman,* Attorney General, for respondent.

*Jeffrey A. Less,* with him, *A. Richard Feldman, Bazelon, Less & Price and James J. McCabe,* with him, *Jane Dalton Elliott, Duane, Morris & Heckscher,* for intervenors, Insurance Federation of Pennsylvania, State Farm Mutual Automobile Insurance Company, and Anne Grahn.

*Richard DiSalle,* with him, *Susan H. Malone, Rose, Schmidt, Chapman, Duff & Halsey,* for intervenor, Erie Insurance Group.

*Jeffrey B. Clay, McNees, Wallace & Nurick,* for intervenor, Nationwide Mutual Insurance Company.

*Alaine S. Williams,* with her, *Nancy McCauley, Kirschner, Walters & Willig,* for Amicus Curiae, Pennsylvania AFL-CIO.

*Simonne N. Roy,* with her, *Clifford A. Rieders,* for Amicus Curiae, Common Cause/Pennsylvania.

*Patricia A. Rodgers, Rodgers, Rodgers and Cullis, P.C.,* for Amicus Curiae, Federation of Business and Professional Women's Clubs, Inc.

*Barbara B. Hillje, Agzigian, Keane and Associates,* for Amicus Curiae, The Pennsylvania Division of The American Association of University Women.

*Seth F. Kreimer,* Of Counsel: *Jeffrey Ivan Pasek, Cohen, Shapiro, Polisher, Shiekman and Cohen,* for Amicus Curiae, American Jewish Congress of Philadelphia.

*Michael L. Browne,* with him, *J. Thomas Morris* and *Marilyn Heffley, Reed, Smith, Shaw & McClay,* for Amici Curiae, The Pennsylvania State Grange and The Pennsylvania Association of Realtors.

OPINION BY JUDGE COLINS, April 25, 1988:

Before the Court in its original jurisdiction are cross-motions for summary judgment seeking to determine the validity of Section 3(e) of The Casualty and Surety Rate Regulatory Act (Rate Act)[1] which provides for gender-based automotive insurance rates.

Section 3 of the Rate Act, entitled "Making of rates," lists the various provisions under which all rates shall be determined. Subsection (e) of that provision, enacted on April 14, 1986, states:

This section shall not be construed to prohibit rates for automobile insurance which are based, in whole or in part, on factors, including, but not limited to, sex, if the use of such a factor is supported by sound actuarial principles or is related to actual or reasonably anticipated experience; however, such factors shall not include race, religion or national origin.

Ann and Craig Bartholomew (petitioners) brought this action on behalf of themselves and their then seventeen year old son, Jonathan, to enjoin the Insurance Commissioner of Pennsylvania (Insurance Commissioner or respondent) from enforcing the 1986 amendment

---

[1] Act of June 11, 1947, P.L. 538, *as amended,* 40 P.S. §1183(e).

to the Rate Act. Petitioners were insured by the Erie Insurance Group, which insurer, along with National Mutual Insurance Company and State Farm Mutual Automobile Insurance Company, was granted intervenor status in this matter.[2] Intervenor, Erie Insurance, bases its insurance rates for passenger cars driven by persons under the age of twenty-four at least in part on the sex of the individual driver. Petitioners, accordingly, were charged a higher premium for their son's auto insurance than would be a similar family insuring a teenage daughter. They seek an order declaring Section 3(e) of the Rate Act violative of article I, §28 of the Pennsylvania Constitution (Pennsylvania Equal Rights Amendment) and further enjoining the Commissioner from otherwise enforcing the Rate Act. Respondent seeks a contrary declaration and contends that Section 3(e) of the Rate Act is constitutional because the gender-based insurance rates charged by the respective companies are founded upon sound actuarial principles.

Some years before the enactment of Section 3(e) of the Rate Act, in March of 1982, this Court considered the validity of the Insurance Commissioner's disapproval of the use of sex as a classification basis for automobile insurance rate differentials. *See Hartford Accident and Insurance Company v. Insurance Commissioner*, 65 Pa. Commonwealth Ct. 249, 442 A.2d 382 (1982) *(Hartford I)*. In affirming the Commissioner's invalidation of such rates, we held that the "Commissioner did not exceed his statutory authority . . . in determining that the sex-based auto insurance rate classification was 'inherently unfairly discriminatory' because it failed to treat 'equals

---

[2] In addition to the thorough briefs filed on behalf of the original and intervening parties, we have had the benefit of equally thorough briefs of *amici curiae,* Pennsylvania AFL-CIO, American Jewish Congress of Philadelphia, Common Cause of Pennsylvania and twenty members of the Pennsylvania General Assembly.

equally.' " *Id.* at 258, 442 A.2d at 386. In 1984, our Supreme Court affirmed our *Hartford I* decision and held that the Insurance Commissioner correctly invalidated sex-based auto insurance rates because such rates violated the Pennsylvania Equal Rights Amendment which clearly prohibits sex-based discrimination. *See Hartford Accident and Indemnity v. Insurance Commissioner,* 505 Pa. 571, 482 A.2d 542 (1984) *(Hartford II).* The Pennsylvania Equal Rights Amendment,[3] states:

> *Prohibition against denial or abridgement of equality of rights because of sex*
>
> Equality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual.

The petitioners argue that they are entitled to judgment as a matter of law because Section 3(e) of the Rate Act clearly violates the constitutional mandate of the Pennsylvania Equal Rights Amendment and the case law interpreting that provision. To support their proposition, petitioners cite *Henderson v. Henderson,* 458 Pa. 97, 327 A.2d 60 (1974), in which our Supreme Court stated:

> The thrust of the Equal Rights Amendment is to insure equality of rights under the law and to eliminate sex as a basis for distinction. The sex of citizens of this Commonwealth is no longer a permissible factor in the determination of their legal rights and legal responsibilities. The law will not impose different benefits or different

---

[3] The Pennsylvania Equal Rights Amendment was approved by popular vote on May 18, 1971, thereby making Pennsylvania the first state to add an equal rights amendment to its Constitution. *See* R. Woodside, Pennsylvania Constitutional Law 193 (1985). "[S]ome territories, including Wyoming and Utah, wrote equal rights provisions into their constitutions before they became states." *Id.*

burdens upon the members of a society based on the fact that they may be man or woman. *Id.* at 101, 327 A.2d at 62.

In *Commonwealth v. Butler*, 458 Pa. 289, 328 A.2d 851 (1974), our Supreme Court again applied the Pennsylvania Equal Rights Amendment to invalidate legislation embodying gender classifications. Faced with a statute which did not require minimum sentences for women while requiring such sentences for men, the Court stated that "the purpose of this constitutional provision was to end discriminatory treatment on account of sex. . . . In this Commonwealth, sex may no longer be accepted as an exclusive classifying tool." *Id.* at 296, 328 A.2d at 855 (citations omitted).

The respondent attempts to counter petitioners' argument by stating that the Pennsylvania Equal Rights Amendment only prohibits sex discrimination under law. In other words, according to respondent, this constitutional provision applies only to actions attributable to the state and not to insurance rates charged by private companies to private policyholders. Respondent argues that there is no state action involved in the matter *sub judice*. It submits that the Rate Act itself does not *create* sexual classifications in insurance rates but *permits* insurance companies to structure their rates on gender classifications so long as such classifications are actuarially sound. Notwithstanding the fact that the insurance companies determine the factors upon which to base their rates, the Insurance Commissioner is charged with the execution of the Rate Act,[4] and, moreover, is "sworn to uphold the Constitution and laws of this Commonwealth. . . ." *Hartford II* at 586, 482 A.2d at 549. Therefore, no insurance rates become effective until they have been deemed approved by the Insurance Commissioner.

---

[4] *See* Section 13 of the Rate Act, 40 P.S. §1193(d).

The respondent's lengthy discussion of the federal concept of state action is inappropriate here. In *Hartford II*, the Supreme Court found:

> The 'state action' test is applied by the courts in determining whether, in a given case, a state's involvement in private activity is sufficient to justify the application of a federal constitutional prohibition of state action to that conduct. *The rationale underlying the 'state action' doctrine is irrelevant to the interpretation of the scope of the Pennsylvania Equal Rights Amendment,* a state constitutional amendment adopted by the Commonwealth as part of its own organic law. The language of that enactment, not a test used to measure the extent of federal constitutional protections, is controlling.

*Id.* at 586, 482 A.2d at 549 (emphasis added). In order to invoke the provisions of the Pennsylvania Equal Rights Amendment, we conclude that there is no requirement of state action as arguably found under the proposed Equal Rights Amendment to the United States Constitution.[5]

It is well established that a state may guarantee its citizens greater rights than those afforded under the United States Constitution. "[I]n the past, [the Courts of this Commonwealth] have not been shy of utilizing

---

[5] It is to be noted that we are not bound by the language of the *proposed* federal Equal Rights Amendment, as respondent and intervenors suggest. While the Pennsylvania Equal Rights Amendment is similar to the proposed federal amendment, it differs in a significant manner. The proposed amendment states that "Equality of rights under law shall not be abridged by the United States or *by any state on account of sex.*" (Emphasis added.) Conversely, the Pennsylvania Equal Rights Amendment contains no express requirement that the denial or abridgement of rights be accompanied by state action. Furthermore, the federal Equal Rights Amendment was never ratified. *See* R. Woodside at 193.

this freedom to afford the citizens of this Commonwealth greater liberties than they would otherwise enjoy." *Fischer v. Department of Public Welfare*, 509 Pa. 293, 305, 502 A.2d 114, 121 (1985). Accordingly, any action authorized by a Pennsylvania statute must not run afoul of the Pennsylvania Constitution.[6]

Having determined that the presence or absence of state action does not preclude this Court from resolving the matter *sub judice*, we now must decide whether Section 3(e), which allows sex-based insurance rates, is violative of Pennsylvania's Equal Rights Amendment.

The petitioners argue that there are no disputed issues of material fact in the instant matter, thereby entitling them to a judgment as a matter of law under Pa. R.C.P. No. 1035. Furthermore, they state that the only question before this Court is whether a statute that permits rates to be based on the sex of the insured is invalid under the Pennsylvania Equal Rights Amendment. The petitioners argue that no factual inquiry is necessary to resolve the issue because Section 3(e) of the Rate Act directly conflicts with the mandate of that Amendment.

The only types of sexual discrimination that have been permitted in this Commonwealth are those which are "reasonably and genuinely based on physical characteristics unique to one sex." *Id.* at 314, 502 A.2d

---

[6] *See* 1 Pa. C. S. §2301 which states that:

*Equality of rights based on sex*

(a) *General rule.*—In recognition of the adoption of section 28 of Article I of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that where in any statute heretofore enacted there is a designation restricted to a single sex, the designation shall be deemed to refer to both sexes unless the designation does not operate to deny or abridge equality of rights under the law of this Commonwealth because of the sex of the individual.

at 125. All other types of sexual discrimination have been outlawed in this Commonwealth.[7] The ability to operate a motor vehicle is not a physical characteristic uniquely related to one's sex. Accordingly, we must declare that sex-based gender classifications pertaining to insurance rates are unconstitutional.

We find support for our conclusion in *Hartford II* where the issue was the interpretation of the phrase "unfairly discriminatory" found in Section 3(d) of the Rate Act, 40 P.S. §1183(d). The Insurance Commissioner determined that this language must be interpreted in a "manner consistent with the strong public policy against gender-based discrimination under law as expressed in Pennsylvania's Equal Rights Amendment." *Id.* at 580, 482 A.2d at 546. As in *Hartford I* and *II,* petitioners in this matter have proven that their teenage son was subject to significantly higher insurance rates than a similarly situated woman for identical insurance coverage. As did our Supreme Court in *Hartford II,* we must find such disparate treatment violative of the Pennsylvania Constitution. The respondent attempts to counter our conclusion by arguing that the General Assembly amended the Rate Act to include Section 3(e) in response to *Hartford II.* In essence, respondent argues that the section of the Rate Act in question is valid because it reflects the statistically-proven sex-based differences in losses for insurers. Even assuming *arguen-*

---

[7] The following cases have protected the rights of all individuals without regard to their sexual identities. *Hartford I; Hartford II; George v. George,* 487 Pa. 133, 409 A.2d 1 (1979); *Commonwealth ex rel. Spriggs v. Carson,* 470 Pa. 290, 368 A.2d 635 (1977); *Adoption of Walker,* 468 Pa. 165, 360 A.2d 603 (1976); *Commonwealth v. Santiago,* 462 Pa. 216, 340 A.2d 440 (1975); *DiFlorido v. DiFlorido,* 459 Pa. 641, 331 A.2d 174 (1974); *Hopkins v. Blanco,* 457 Pa. 90, 320 A.2d 139 (1974); *Conway v. Dana,* 456 Pa. 536, 318 A.2d 324 (1974).

*do*, that the affidavits submitted by the intervenors prove that the rates in question are actuarially sound, we must deny their motion for summary judgment. In *Hartford II* at 584, 482 A.2d at 548, the Supreme Court stated that "[g]ender-based rates . . . rely on and perpetuate stereotypes similar to those condemned [in the past]" and further noted that the "efficacy of such rates is questionable even on the actuarial level." Although the Supreme Court was not dealing with the section of the Rate Act that is currently before this Court, it nevertheless anticipated that insurance rates based on sexual classifications would not pass constitutional muster.

For the foregoing reasons, we must grant petitioners' motion for summary judgment. The thrust of the Pennsylvania Equal Rights Amendment is to insure equality under the law and to eliminate sex as a basis for distinction. Therefore, Section 3(e) of the Rate Act which permits gender-based insurance rates is clearly violative of article I, §28 of the Pennsylvania Constitution and those decisions of our Supreme Court culminating in *Hartford II*.[8]

The cross-motion for summary judgment filed by the respondent and intervenors alleging that the statutory provision is constitutional because the rates in question are actuarially sound must be denied. Assuming, as we must, that the affidavits submitted by intervenors as the non-moving parties in petitioners' motion support a conclusion that the rates in question are actuarially sound, such proof would only satisfy the first prong of Rule 1035 requiring that there be no unresolved material issue of fact. Most significantly, the respondent and intervenors are not entitled to summary judgment because, as a matter of law, article I, §28 of

---

[8] See note 7.

the Pennsylvania Constitution and *Hartford II* clearly prohibit the conduct authorized by Section 3(e) of the Rate Act.

Therefore, in keeping with Pennsylvania's tradition of eliminating sexual discrimination on all bases except those where physical attributes permit such discrimination and recognizing the fact that "the constitution is enacted by the people and not the legislature,"[9] we, accordingly, grant petitioners' motion for summary judgment and deny the respondent's and intervenors' cross-motion for summary judgment.

## ORDER

AND NOW, this 25th day of April, 1988, petitioners' Motion for Summary Judgment in the above-captioned matter is hereby granted. The respondent's and intervenors' Cross-Motion for Summary Judgment is hereby denied, both sides to bear their own costs.

President Judge CRUMLISH, JR. concurs in the result only.

Judge PALLADINO did not participate in the decision in this case.

---

[9] R. Woodside at 68.