551 A.2d 1162

Pennsylvania National Organization for Women et al., Petitioners *v.* Commonwealth of Pennsylvania, Insurance Department, Respondent.

Argued June 15, 1988, before President Judge CRUMLISH, JR., and Judges CRAIG, MACPHAIL, DOYLE, BARRY, COLINS and McGINLEY.

Laurie L. Williams, for petitioner; Of Counsel: Catharine A. MacKinnon, Institute for Research on Women and Gender.

Arthur Selkioff, Assistant Counsel, with him, Theodie L. Peterson, III, and Linda J. Wells, Chief Counsel, for respondent.

H. Lee Roussel, with him, Jeffrey B. Clay and Kevin J. Frederick, McNees, Wallace & Nurick, for intervenors, Nationwide Mutual Insurance Company and Allstate Insurance Company.

Jane L. Dalton, with her, James J. McCabe, Duane, Morris & Heckscher, for intervenors, State Farm Auto Insurance Company, Liberty Mutual Fire Insurance Company and Insurance Services Office, Inc.

· OPINION BY PRESIDENT JUDGE CRUMLISH, JR., December 22, 1988:

The Pennsylvania National Organization for Women and six individual petitioners[1] seek review of the Insurance Commissioner's adjudication and order dismissing those counts of their complaint[2] alleging violations of (1)

---

[1] The individual petitioners are Kathleen Baranski, Betty Jones, Betty Lee, Linda Martin, Linda Morrow and Bridget Whitley. Hereinafter, the petitioners shall collectively be referred to as NOW.

[2] NOW's original complaint to the Insurance Department, filed against State Farm, Nationwide, Allstate and Liberty Mutual Insurance companies and Insurance Services Office, Inc., containing six counts was filed on September 23, 1986. On May 18, 1987, Insurance Commissioner Constance B. Foster entered an order dismissing counts four, five and six of NOW's complaint and simultaneously staying her actions on counts four and five pending a decision by this Court in *Bartholomew v. Foster,* 115 Pa. Commonwealth Ct. 430, 541 A.2d 393 (1988), in which the petitioners therein challenged the use of gender-differentiated rates in the writing of auto insurance policies in the Commonwealth.

NOW filed a petition for review of the Commissioner's May 18, 1987 order (No. 1276 C.D. 1987), which was consolidated by Order of this Court with the instant appeal (No. 376 C.D. 1988). We conclude that our decision in *Bartholomew* addresses and disposes of the constitutional challenges brought in counts four and five of NOW's complaint. We agree with the Commissioner that, as to count six, the individual petitioners and NOW did not have a private right of action under the Unfair Insurance Practices Act, Act of July 22, 1974, P.L. 589, *as amended,* 40 P.S. §1171.1-1171.15 (UIPA). Because we find no abuse of discretion in the Commissioner's decision *not* to order a hearing on NOW's allegations pursuant to her investigatory powers under the UIPA, we affirm her dismissal of count six of NOW's complaint.

In addition, on September 22, 1988, NOW filed an application for post-submission communication, Pa. R.A.P. 2501(a), seeking permission to file an application for injunction pending review of this matter. NOW concurrently submitted that application. An injunction application is not the type of post-submission communication contemplated by Pa. R.A.P. 2501(a), which precludes the sub-

The Casualty and Surety Rate Regulatory Act, Act of June 11, 1947, P. L. 538, *as amended,* 40 P.S. §§1181-1199 (hereinafter the Rate Act); (2) the equal protection guarantees of the Pennsylvania[3] and United States Constitutions;[4] and (3) the Pennsylvania Equal Rights Amendment.[5]

The gravamen of NOW's complaint is that the Commissioner ignored evidence of the automobile insurers' discriminatory practices as well as evidence of the discriminatory effect on the individual petitioners, and on women as a group, which occurs when rate structures are not based on mileage.

Before turning to its principal contentions, we will address NOW's allegation that the presiding hearing officer improperly denied its motion to correct the hearing transcript. NOW argues that it discovered significant errors in that portion of the transcript in which it offered evidence of the practicability of a per mileage rate-making methodology, which the hearing officer re-

---

mission of briefs, letters and memoranda unless upon application to the court.

Nonetheless, petitioners' application, which seeks to enjoin the Commissioner's implementation of this Court's Order in *Bartholomew,* made no showing that an application for relief was made to the Department or was not practicable. Pa. R.A.P. 1781. We are unable to perceive imminent and irreparable harm to petitioners resulting from the Commissioner's notice in the Pennsylvania Bulletin, 36 Pa. B. 4603 (1988), of her plans to implement this Court's Order in *Bartholomew.* Therefore, because of this Court's disposition of the petition herein, we shall dismiss the petitioners' application for injunction pending review.

[3] Article I, §1 and Article III, §32 have generally been considered to guarantee this Commonwealth's citizens equal protection under the law. Article I, §26 is known as our Constitution's non-discrimination clause. *Fischer v. Department of Public Welfare,* 509 Pa. 293, 502 A.2d 114 (1985).

[4] U.S. Const. amend. XIV.

[5] Pa. Const. Art. I, §28.

fused to correct. However, after a careful review of the record, we conclude that the presiding officer did not abuse his discretion in denying NOW's motion, submitted approximately one month *after* the time fixed for filing briefs. 1 Pa. Code §35.132 requires that such motions be made no later than ten days *in advance* of the time fixed for filing final briefs. NOW's argument that it did not discover the errors until "the need arose" to review final pages of the transcript (Petitioners' brief, pp. 68-69) is unpersuasive.

Next, we shall address NOW's contention that the Commissioner's adjudication is unsupported by the evidence.

Section 3 of the Rate Act provides in pertinent part that

(a) [d]ue consideration shall be given to . . . relevant factors within and outside this Commonwealth.

. . . .

(d) Rates shall not be excessive, inadequate or unfairly discriminatory. No rate shall be held to be unfairly discriminatory unless, allowing for practical limitations, it clearly fails to reflect with reasonable accuracy the differences in expected losses and expenses.

40 P.S. §1183(a) and (d).

In her adjudication, the Commissioner found, among others, the following facts:

22. Mileage is a relevant rating factor, *i.e.*, there is an increase in risk of loss (accident frequency) as mileage increases.

23. Women drive fewer miles than men, on average, and have fewer automobile accidents.

24. The severity of automobile accidents is not related to mileage.

25. Risk of loss is not directly proportional to miles driven, *e.g.*, vehicles driven 20,000

miles are not involved in twice as many accidents as vehicles driven 10,000 miles, and do not incur twice the losses.

26. Risk of loss is affected not only by mileage, but also by road, traffic, and weather conditions, and by the skill and care of the driver.

NOW maintains that these findings directly conflict with the insurers' actual practices of using gender-based rates in some instances,[6] that they ignore the evidence presented by NOW and that they cannot be sustained in the face of contradictory actuarial data. NOW argues that the Commissioner's finding of no proportionality between risk of loss and miles driven is contradicted by the weight of the evidence. We disagree.

While NOW's documentary evidence showed some relationship between mileage and accident rates, it showed little to establish any quantitative correlation between these two factors or between mileage and loss experience. Of course, it is for the Commissioner to assess the weight of the evidence. She concluded that NOW's statistical data was flawed because it consisted of government data not compiled for insurance purposes[7] and included all drivers (uninsured, commercial and otherwise) which would tend to alter the results. Further, she found that this data was presented without benefit of explanation by any expert with statistical or rate-making experience.

_____

[6] NOW asserts that under the insurers' classification a combination of driver marital status and age determines whether a car is classified on gender or placed in the unisex "adult" class.

[7] NOW offered into evidence summary reports of a U.S. Department of Transportation survey, "National Personal Transportation Study 1983-1984." NOW exhibit No. 23. NOW relied on this evidence, *inter alia,* to show a relationship between mileage and accident frequency.

On the other hand, the intervenor insurance companies presented expert testimony showing that the data NOW offered was less predictive of loss experience than NOW contends. (Notes of Testimony, 5/21/87, pp. 958-959.) Moreover, these insurance companies presented ample evidence of lack of proportionality between loss costs and mileage. Mavis A. Walters, Senior Vice President of intervenor Insurance Services Office, Inc., testified that neither auto accident involvement statistics nor mileage is proportional to the frequency of insurers' claims. N.T., 5/21/87, pp. 1573-75, 1580-1581. Indeed, exhibit D-43, which was Insurance Services Office's compilation of portions of the government data NOW offered, established no direct correlation between mileage and accident frequency. It was shown that a slight increase in annual mileage led to a decline in accident frequency. In light of the evidence presented by the intervenor insurance companies,[8] we cannot say that the Commissioner's findings are without support in the record. As has been said:

'Insurance rate making is a technical, complicated and involved procedure carried on by trained men. It is not an exact science. Judgment based upon a thorough knowledge of the problem must be applied. Courts cannot abdicate their duty to examine the evidence and the adjudication, and to interpret and apply the law, but they must recognize the value of the judgment of an Insur-

---

[8] Michael A. Lamonica, senior actuary for Allstate Insurance Company, and Robert T. Muleski, actuary for Liberty Mutual Insurance Company, both testified as experts for the insurance companies on the imprecision and impracticality of using mileage as a rating factor in all but limited circumstances. Additionally, Michael Miller, an expert in rate making for the Casualty Actuarial Society, testified that there was no relationship between mileage and loss costs.

ance Commissioner who is specializing in the field of insurance and the efficacy of an adjudication supported by evidence of experts who devoted a lifetime of service to rate making.'

*Nationwide Mutual Insurance Co. v. Denenberg*, 15 Pa. Commonwealth Ct. 24, 31, 324 A.2d 878, 881 (1974).

NOW also contends that the Commissioner's adjudication is in error because "due consideration" to mileage as a factor was not given in her adjudication, in contravention of the Rate Act. It argues that, although the Commissioner found mileage to be a relevant factor and that women drive only half as much as men on average, the zero to twenty percent rate discounts given by insurance companies as merit factors *do not adequately* consider mileage as a factor.

However, the evidence which NOW itself put forth established that there is no constant relationship between accident and mileage exposure.[9] Moreover, the Commissioner found that the costs of implementing a mileage based rate-making structure are not warranted by the speculative benefits of such a system.

NOW maintains that it did not have the burden to demonstrate how or at what cost mileage-based rates could be implemented. Nonetheless, it did provide in rebuttal testimony proposals for such a system.[10] The Commissioner found the data required was neither currently available nor verifiable.

We agree with the Commissioner that, given the uncertainties and costs of mileage-based rates, by providing for certain discounts in their merit factor rating, the intervenor insurance companies have given all the consideration that is due to mileage as a factor.

---

[9] NOW exhibit No. 5, Items 6 and 7.

[10] NOW's proposals were based on obtaining a yearly verified odometer reading of actual mileage in order to collect loss experience data based on mileage.

Our review on appeal from approved insurance rate filings, where the Commissioner is clothed with discretion in the discharge of her duties, is circumscribed. We will not interfere unless the record clearly establishes a violation of the law, an arbitrary abuse or unreasonable determination due to the absence of substantial evidence to support findings, or a violation of constitutional rights. *Nagle v. Insurance Department ex rel. Sheppard,* 48 Pa. Commonwealth Ct. 295, 409 A.2d 525 (1980).

We have determined there is ample evidence to support the Commissioner's findings and that the petitioners have not shown *how* the approved rates violate the Rate Act, either by failing to give due consideration to mileage or, "allowing for practical limitations," by failing to reflect the differences in expected losses and expenses.[11]

We now turn to NOW's contention that the failure to implement mileage-based rates violates the United States and Pennsylvania Constitutions' guarantees of equal protection and this Commonwealth's equal rights amendment.

NOW, in essence, contends that gender neutrality in the insurers' practice of rate making does not satisfy equal protection or equal rights guarantees. It argues that the Commissioner's remedy for discrimination against women, *i.e.,* flat rates for both sexes, is harmful in itself to women. Because the insurers' premiums do not respond to the disparity in mileage between men and women, they subsidize men's rates by overcharging women.

Preliminarily, we find no violation of the federal equal protection clause, which does not apply to private conduct, *Jackson v. Metropolitan Edison Co.,* 419 U.S.

---

[11] 40 P.S. §1183(d).

345 (1974), such as the insurers' filing of rates in this case. *Welsch v. Aetna Insurance Co.*, 343 Pa. Superior Ct. 169, 494 A.2d 409 (1985).[12] However, as our Supreme Court stated in *Hartford Accident and Indemnity Co. v. Insurance Commissioner*, 505 Pa. 571, 482 A.2d 542 (1984), the scope of protection afforded our Commonwealth's equal rights amendment is broader and reaches sex discrimination *"under the law." Id.* at 586, 482 A.2d at 549 (emphasis in original). Our Supreme Court instructs us that all state and local government entities and officials are bound by the ERA in their formulation, interpretation and enforcement of statutes, regulations and decisional law.

Nonetheless, we find that the Commissioner correctly concluded that the insurers' practice of charging a uniform rate as between men and women did not violate the ERA. Because the insurers established that there is no direct correlation between mileage and insurance costs, and the Insurance Commissioner accepted this evidence, NOW cannot prove "de facto" discrimination by insisting without some support that the insurers' rate-making practices have a discriminatory effect. As the Court stated in *Hartford*, " '[t]he law will not impose different benefits or burdens upon the members of a society based on the fact that they may be man or woman.' " 505 Pa. at 583, 482 A.2d at 548 (quoting *Henderson v. Henderson*, 458 Pa. 97, 101, 327 A.2d 60, 62 (1974)). Absent some finding based on substantial evidence that automobile insurance rates place a disproportionate burden on women by requiring them to bear more than their fair share of the *accident risk*

---

[12] Likewise, we find no violation of our Commonwealth's guarantee of equal protection, guided as we are by the same principles of interpretation. *Fischer v. Department of Public Welfare*, 509 Pa. 293, 306, 502 A.2d 114, 121 (1985).

distribution, we perceive no ERA violation. " 'The thrust of the [ERA] is to insure equality of rights under the law and to eliminate sex as a basis for distinction.' " *Id.* at 583, 482 A.2d at 548. The Commissioner found, based on the evidence and reasoning cited herein, that mileage is not an adequate basis for distinction in rates. It does not follow from this finding, albeit one contested by the petitioners, that the Commissioner's approval of those rates effectuates a gender-based distinction. Indeed, there is no reliance on gender as a rate-setting factor, merely a decision to approve rates without utilizing a factor that, at best, would arguably benefit women.

Having found substantial evidence to support the Commissioner's findings and no legal error or constitutional violation, we affirm the adjudication and order.

## ORDER

The order and adjudication of the Commonwealth Insurance Commissioner, at Docket No. R86-9-6 dated May 18, 1987, and February 11, 1988, is affirmed.

Petitioners' application for injunction pending review is dismissed.

Judge MACPHAIL did not participate in the decision in this case.