558 A.2d 568

The **TRAVELERS INDEMNITY COMPANY et al., Petitioners,**

v.

**COMMONWEALTH of Pennsylvania, INSURANCE DEPARTMENT, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 1, 1988.

Decided March 14, 1989.

Designated as opinion to be Reported May 10, 1989.

42

S. Walter Foulkrod, III, Stephen L. Banko, Jr., and R. James Reynolds, Jr., Foulkrod, Reynolds & Havas, Harrisburg, for petitioners.

Karen Gantt, Asst. Counsel, Jean Callihan, Acting Chief of Litigation, Linda J. Wells, Chief Counsel, Theodie L. Peterson, III, Chief of Litigation, Kenneth B. Allen, Asst. Counsel, Harrisburg, for respondent.

Before CRUMLISH, Jr., President Judge,
McGINLEY, J., and NARICK, Senior Judge.

## OPINION

CRUMLISH, Jr., President Judge.

■ The Travelers Indemnity Company et al. (Travelers) appeal the Commonwealth Insurance Commissioner's order reversing a decision of an Insurance Department (Department) hearing officer. In addition, the order enjoined Travelers from terminating its agency contract with the Wells Insurance Agency. We affirm.[1]

---

1. Our scope of review is limited to determining whether necessary findings are unsupported by substantial evidence, an error of law was

In June 1979, Delores Wells, formerly a Travelers' account analyst, entered into an agency contract. During her first several months of business, Wells had a high volume of policy sales; Travelers thereafter limited the number of auto and homeowner policies she could write. In 1982, Travelers advised Wells that her agency would be terminated because of high loss experience. However, it later decided that efforts would be made to rehabilitate the agency. Various recommendations were made to improve Wells' profitability but, in September 1986, Travelers again informed Wells that her agency contract would be terminated because of continued losses. Wells petitioned for administrative review of this decision. Section 2(d) of the Act of September 22, 1978 (Act 143), P.L. 763, *as amended,* 40 P.S. § 242(d). Upon review of the hearing officer's recommendation, the Commissioner concluded that Travelers did not make a reasonable effort to rehabilitate the agency prior to termination, in violation of section 2(f)(3) of Act 143, 40 P.S. § 242(f)(3), and thus ordered reinstatement.

Act 143, as it existed at the time of Wells' appeal, provided in pertinent part:

> After an agency contract has been in effect for a period of five years, no insurer shall terminate its contract with an agent without first providing such agent and the Insurance Commissioner with written notification at least 90 days prior to the date of termination.

40 P.S. § 242(a).[2]

> No insurer shall terminate its contract with an agent due to the adverse experience of a single year. Prior to such termination, it shall be the obligation of the insurer to demonstrate that it made a *reasonable attempt to rehabilitate* such agent.

committed or a constitutional right was violated. *Novak v. Insurance Department,* 106 Pa. Commonwealth Ct. 232, 525 A.2d 1258 (1987).

2. The 1987 amendments deleted the former requirement that an agency contract be in effect for five years prior to termination. Travelers cites as evidence of its good faith that at the time Wells was put into rehabilitation, it was not obliged to make such efforts as the agency contract had not yet been in existence for five years.

40 P.S. § 242(e) (emphasis added).[3]

Travelers contends that the Commissioner's findings are not supported by substantial evidence because its numerous meetings and communications with Wells indicate its good faith efforts to rehabilitate her agency. It cites Wells' continued loss experience through 1986, when her combined loss ratio was more than three times the industry standard,[4] as justification for its ultimate decision to terminate her contract. Travelers argues that these facts demonstrate that its rehabilitation efforts were reasonable and that the Commissioner's decision to the contrary is arbitrary and capricious.

The Department responds that the evidence on which the Commissioner relied indicates that Wells' rehabilitation plan, which involved restricting new policies, premiums and monitoring prior losses, was no more than a thinly veiled attempt by Travelers to rid itself of an undesirable inner city agency.

Whether an insurer has made a reasonable attempt to rehabilitate an insurance agent is to be decided on a case-by-case basis. *R.A. Freudig Associates v. Insurance Department*, 110 Pa. Commonwealth Ct. 311, 532 A.2d 509 (1987). To the extent the Commissioner's findings represent credibility determinations, they are not reviewable on appeal. *B.G. Balmer & Co. v. Insurance Commissioner*, 114 Pa. Commonwealth Ct. 239, 538 A.2d 968 (1988). In *Freudig*, the agency complained, as here, that its insurance company failed to identify adequately problems and goals, or offer assistance in meeting those goals. This Court affirmed the Commissioner and concluded that the agency was provided a reasonable amount of time (nineteen months) in which to implement its company's precisely defined rehabilitation plan.

3. The 1987 amendments also added subsection (f), which establishes specific requirements for notice of rehabilitation and eventual termination.

4. The Commissioner found that Travelers defined an acceptable loss ratio as 55%. Finding of Fact No. 5. In its brief, Travelers cites the industry standard as 65%. Petitioner's brief, p. 10.

■ Here, the Commissioner found several factors indicating that the plan was unreasonable and unlikely to succeed. She initially found that Travelers reluctantly granted Wells an agency contract in 1979 [5] and soon restricted her as to the types and amounts of insurance coverage she could write. The Commissioner explicitly relied on a November 3, 1982 internal memorandum in which Personal Lines Manager Alfred B. Foster wrote, "This is an agency that we told Home Office we would cancel as soon as possible, so it's incumbent upon us to take the necessary actions as promptly as possible." Travelers Exhibit No. 4. The Commissioner found this statement and Travelers' overall course of conduct to be an indication of its intention from the outset to terminate the Wells' agency. She further found that from the time of the plan's actual implementation in November 1982 until the contract termination on January 1, 1987, Travelers progressively restricted new business and terminated existing business.

Although meetings and communication between Travelers and Wells are extensively documented, the Commissioner concluded that these were merely perfunctory gestures prior to the intended termination. Much of the correspondence actually praises Wells for her cooperation and adherence to underwriting guidelines. Traveler's Exhibits Nos. 2, 8, 9, 10, 11, 12, 13, 15.

The Commissioner also found it unreasonable for Travelers to continue to measure premiums written during the rehabilitation period against losses from previous years to determine whether Wells' agency was improving its profitability. Travelers argues that its methodology is a generally accepted accounting method and that the Commissioner's measure of profitability was invalid. Travelers maintains that the Commissioner's mode of analysis was not a properly promulgated regulation and unreasonably permits an agency placed in rehabilitation to remain operating indefi-

5. Commissioner's Finding of Fact No. 3. The Commissioner evidently credited Wells' testimony as to the hostile environment surrounding her original procurement of an agency contract (N.T., 1/16/87, p. 6).

nitely until profits and losses under the current rehabilitation plan could be fully developed.

Travelers' reasoning evinces an overly narrow view of the purpose of rehabilitation and of the Commissioner's role in interpreting an insurer's actions pursuant to such a plan. As the Commissioner astutely concluded, by continuing to burden Wells with large losses from the years prior to rehabilitation, and at the same time restricting present policy sales, there was virtually no opportunity for the rehabilitation plan to succeed. It was well within the Commissioner's discretion to conclude that the more reasonable approach would be to analyze Wells' performance within the discrete rehabilitation period. Although Travelers may have to maintain additional reserves to charge against losses attributable to the pre-rehabilitation period, for the limited purpose of evaluating Travelers' rehabilitation efforts, we agree with the Commissioner that a truer picture of Wells' performance under the rehabilitation plan is presented by accounting for premiums and losses attributable only to those four years.

 While many of the Commissioner's findings in this case are inferences drawn from conflicting testimony and documentary evidence, it is within the Commissioner's province to draw such inferences and interpret inconsistent or ambiguous data. *Pennsylvania National Organization for Women v. Insurance Department,* 122 Pa. Commonwealth Ct. 283, 551 A.2d 1162 (1988). The Commissioner's expertise in this area is to be given considerable deference. *Insurance Department v. Pennsylvania Coal Mining Association,* 26 Pa. Commonwealth Ct. 348, 363 A.2d 823 (1976). It is basic to appellate review that, although a court might have arrived at a different result, it may not usurp an agency's fact-finding function.

 Lastly, while we acknowledge the predicament in which Travelers finds itself in maintaining a persistently unprofitable agency, we also recognize the legislative mandate of Act 134, which requires an insurer to make *reason-*

*able* efforts at rehabilitation prior to terminating an agency that has established a clientele for that insurer. Under the Act, an insurance company cannot be forced to continue unprofitable operations indefinitely in an inner-city location. However, once an agency is established, there arises a duty to sustain that relationship to the benefit, at least in part, of those insureds who may have great difficulty in obtaining such insurance from other similarly disenchanted insurance companies.

Because we find substantial evidence to support the Commissioner's determination that Travelers' rehabilitation plan for Wells' agency had no reasonable chance of success, we affirm her order and adjudication.

## ORDER

The order of the Insurance Commissioner of the Commonwealth of Pennsylvania, Docket No. P86–11–2 dated January 22, 1988, is affirmed.