576 A.2d 1156

**CHARLES P. LEACH AGENCY, INC., Petitioner,**

v.

**Constance B. FOSTER, Insurance Commissioner of the Commonwealth of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 5, 1990.

Decided June 7, 1990.

Reargument Denied August 3, 1990.

Patricia Carey Zucker, with her, William R. Balaban, Balaban and Balaban, Harrisburg, for petitioner.

Terrance A. Keating, Asst. Counsel, with him, Victoria A. Reider, Deputy Chief Counsel, and Linda J. Wells, Chief Counsel, for respondent.

Stephen L. Banko, Jr., Foulkrod, Reynolds & Havas, Harrisburg, for amicus curiae, Foremost Signature Ins. Co., for appellee.

Before COLINS, PALLADINO, and McGINLEY, JJ.

PALLADINO, Judge.

Charles P. Leach Agency, Inc. (Leach Agency) appeals from an order of a Chief Hearing Examiner, Jean M. Callihan (Examiner) who was appointed by the Insurance Commissioner (Commissioner). Examiner concluded that Foremost Signature Insurance Company's (Foremost) termination of its agency contract with Leach Agency complied with Sections 1—6 of the Act of September 22, 1978 (Act 143)[1] (termination of agency contracts).

Leach Agency and Foremost were parties to an agency contract (Agency Contract), which authorized Leach Agency to sell Foremost's insurance policies in Pennsylvania on a commission basis. In early March 1989, Charles P. Leach (Leach) learned that Foremost planned to cease writing new automobile insurance policies in Pennsylvania (Auto Policies). Leach organized a meeting of all Foremost's Pennsylvania agents (Agents), which was attended by Leon Schneider, Foremost's Zone Vice President (Schneider). Schneider answered Agents' questions as to when the decision was to be implemented and the impact it would have on renewals and commissions. Schneider stated that any ques-

1. P.L. 763, *as amended,* 40 P.S. §§ 241–246.

tions he had been unable to answer would be answered if submitted in writing to his office.

Thereafter, in a letter to Schneider, Leach asked three additional questions, after which Leach was informed that Foremost would discontinue accepting new Auto Policies after April 15, 1989 and that an amendment to Agency Contract to that effect would be sent to him for his signature.

When Leach received the formal amendment agreement (Amendment),[2] he refused to sign it, stating that until his questions are answered Leach Agency would continue to bind Foremost under the existing Agency Contract. Foremost attempted to answer the remaining questions as to the Auto Policy decision, by circulating a seven-page memorandum written by Schneider, but Leach complained in a letter to Schneider that the answers in the memorandum were not the answers Schneider gave at the March 15, 1989 meeting. Leach also complained in the same letter that alleged confusion over the implementation of the Auto Policy decision was damaging Foremost's credibility and reputation. Leach, who was also a Foremost stockholder, made a similar complaint at Foremost's annual stockholders' meeting.

After the stockholders' meeting, Leach Agency sent Foremost a list of 12 individuals for whom it had written new Auto Policies, effective after the April 15, 1989 deadline. Shortly thereafter, Leach received a letter from John J. Hannigan, Foremost's Executive Vice President, which states that because their business relationship had "become strained to the point where it [was] best to discontinue our contractual agreements," Foremost was terminating Agency Contract effective in 90 days.

2. Amendment stated in pertinent part:
New business authority for automobile is removed effective April 15, 1989. Renewal business will continue to be handled at the same terms as shown on the condition of the Agent's Contract. This Amendment shall not alter, waive, vary, or extend any of the provisions, limitations, or conditions of the Agent's Contract, except as specifically provided herein.

Pursuant to Act 143, Leach requested a review of the termination by Commissioner, who appointed Examiner. Examiner held a hearing, after which she found that Agency Contract was terminated because of the "adversarial" nature of the relationship between Leach Agency and Foremost, which actually existed and was pertinent to Leach Agency's representation of Foremost. Accordingly, Examiner held that the termination was for a "reasonable" cause and in compliance with Act 143.

On appeal to this court,[3] Leach Agency raises three issues: (1) whether the termination based on an "adversarial relationship"[4] between an agent and an insurance company was unreasonable because it was contrary to an agent's duties under general agency law; (2) whether the termination was unreasonable because it was based on Leach's activities which were allegedly privileged under general agency law; and (3) whether the termination was in retaliation for Leach's statement to the stockholders and therefore unreasonable.

■ As a threshold issue of first impression, we must decide the scope of Commissioner's Act 143 review. Section 2 of Act 143, 40 P.S. § 242, provides in pertinent part:

(a) **Notice.**—No insurer shall terminate its contract with an agent without first providing such agent and the Insurance Commissioner with written notification at least 90 days prior to the date of termination. Such notice shall advise the agent of the right of appeal under section (d).

(b) **Reason for action.**—Such notification shall set forth the insurer's reason for the action.

. . . .

3. Our scope of review of administrative agency decisions is limited to a determination of whether an error of law has been committed, whether constitutional rights have been violated and whether findings of fact are supported by substantial evidence. Administrative Agency Law, 2 Pa. C.S. § 704.

4. It is not disputed that an "adversarial relationship" had developed between Leach Agency and Foremost.

**(d) Administrative review.**—Any agent may, if within 30 days of receipt of notice of termination, request in writing to the Insurance Commissioner that the Insurance Commissioner review the action of the insurer for the purpose of determining that said termination was in compliance with the provisions of this act.

**(e) Restrictions on termination.**—Prior to termination due to adverse experience, mix of business or lack of premium volume, it shall be the obligation of the insurer to make a reasonable attempt to rehabilitate such agent as set forth in subsection (f). No insurer shall terminate its contract with an agent due solely to the adverse experience for a period of less than two successive years prior to the notice of rehabilitation as set forth in subsection (f).

Act 143 lists only prohibited but not permitted reasons for an insurance company's termination of an agency contract. We must decide whether it is within the Commissioner's scope of review to decide if the reason for a termination is reasonable where, as here, it is not disputed that the reason is not prohibited.

Examiner concluded that Act 143 authorized her to decide if the reason for the termination was reasonable. Examiner based her decision on this court's discussion in *Samilo v. Insurance Department*, 98 Pa.Commonwealth Ct. 232, 510 A.2d 412 (1986). Even though we agree with the result reached by Examiner, we do not agree that *Samilo* is applicable to the present case.

*Samilo* involved an insurance company's decision not to renew an insured's automobile insurance policy. An insured-insurer relationship must be distinguished from the present principal-agency relationship, in that only the latter is subject to the general agency law principle of at-will termination.

The general rule is that when a contract provides that one party shall act as an agent but does not specify a duration or prescribe conditions which shall determine the

duration of the relation, the contract may be terminated by either party "at-will." *Cummings v. Kelling Nut Co.*, 368 Pa. 448, 84 A.2d 323 (1951). "At-will" means that absent a statutory or contractual provision to the contrary, the law has taken for granted the power of either party to terminate the relationship for any or no reason.[5] *Geary v. United States Steel Corporation*, 456 Pa. 171, 175, 319 A.2d .174, 176 (1974).

Agency Contract does not specify a duration for the agency relationship or prescribe conditions which shall determine the duration of the agency relationship. Therefore, Agency Contract was terminable at-will, and when Examiner determined that the reason for termination was not prohibited by Act 143, her review of the reason for the termination was completed.

Because of our disposition of the threshold issue, we need not address Leach Agency's arguments that Examiner erred by concluding that the cause for the termination was reasonable. Accordingly, we affirm Examiner's conclusion that the termination complied with Act 143.

### ORDER

AND NOW, June 7, 1990, the order of Chief Hearing Examiner, Jean M. Callihan, in the above-captioned matter is affirmed.

Former President Judge CRUMLISH, Jr., did not participate in the decision in this case.

---

**5.** Under general agency law a principal always has the power to revoke an agency, but may be liable for damages where the revocation is not pertinent to the agency or the agent's duties to the principal. *Dorn v. Stanhope Steel, Inc.*, 368 Pa. Superior Ct. 557, 534 A.2d 798 (1987), *petition for allowance of appeal denied*, 518 Pa. 656, 544 A.2d 1342 (1988). Such liability is outside Commissioner's field of expertise and more properly a question for a trial court.