632 A.2d 1022

**The OHIO CASUALTY INSURANCE COMPANY, West American Insurance Company and American Fire and Casualty Company, Petitioners,**

v.

**PENNSYLVANIA INSURANCE DEPARTMENT, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 13, 1993.

Decided Oct. 18, 1993.

150

Richard E. Freeburn, for petitioners.

Terrace A. Keating, Dept. Counsel, for respondent.

Before PALLADINO and PELLEGRINI, JJ., and NARICK, Senior Judge.

PELLEGRINI, Judge.

The Ohio Casualty Insurance Company, West American Insurance Company, and American Fire and Casualty Company (collectively, Ohio Casualty) appeal from an order of the Insurance Commissioner requiring it to cease and desist from terminating its agency contract with Clemens–Hall & Associates, Inc. (Clemens–Hall), and rescinding its Notice of Termination to Clemens–Hall dated June 23, 1992.

This matter arises as a result of the following history. From 1954 to April 30, 1989, Ohio Casualty had an agency contract with the Fenstermacher Insurance Agency, Inc. (Fenstermacher Agency). As a result of a merger between the Fenstermacher Agency and the Clemens and Son Agency which formed Clemens–Hall & Associates, another corporation, Ohio Casualty executed an agency contract on May 1, 1989, with Clemens–Hall. Prior to the merger, Drew Hall owned 100% of the stock in the Fenstermacher Agency and Peter M. Clemens was the principle of the Clemens and Son Agency. After the merger, Clemens and Hall each owned 50% of the stock in the new corporate entity.

In 1988, Clemens–Hall's written premiums were $145,975. In 1989, they declined to $87,917, and in 1990, further declined to a low of $30,023. Due to its declining premium volume, Ohio Casualty notified Clemens–Hall by letter dated May 9, 1991, that it was placed on rehabilitation effective May 1, 1991, for one year pursuant to 40 P.S. § 242(f) [1] because continued

---

1. Act of September 22, 1978, P.L. 763, No. 143, *as amended.* Also referred to as Act 143. 40 P.S. § 242(f) provides:

   (1) An insurer shall notify an agent, in writing, that the agent is placed on a rehabilitation program.
(2) Such notice shall specify the reasonable goals and objectives of the rehabilitation program.
(3) Such notice shall inform the agent that failure to attain the goals and objectives specified in the rehabilitation program may result in agency termination.
(4) The rehabilitation program of an agent under this act shall not be for a period of less than one year.
(5) Compliance with the rehabilitation program and attainment of the rehabilitation goals shall bar termination of the agency solely due to adverse experience, mix of business or lack of premium volume.

growth was necessary in order to remain in the market. The letter also outlined the following goals and objectives of its rehabilitation plan which were to be obtained within that time:

· The loss ratio for the agency for the 12 month period ending May 1, 1992, must be under 56%;

· Diversification must be improved. Personal lines are not to exceed 40% of your total volume;

· Written premium volume must be at least $150,000.

The letter further specified that failure to achieve these goals could result in termination of the agency contract, but that Ohio Casualty would do everything it could to assist Clemens–Hall in reaching these goals.

On June 7, 1991, Ohio Casualty wrote another letter to Clemens–Hall specifying that the rehabilitation plan was in accordance with Act 143. After that date, Ohio Casualty wrote three more letters to Clemens–Hall on July 22, 1991, December 10, 1991, and February 20, 1992, regarding the rehabilitation plan. The gist of those letters was that Clemens–Hall was progressing towards the established goals, but had a ways to go. On June 17, 1992, however, Ohio Casualty wrote to Clemens–Hall indicating that it did not meet all of the goals and objectives of the rehabilitation plan and it was going to proceed to send a notification of agency termination.

On June 23, 1992, Ohio Casualty sent Clemens–Hall a letter terminating its agency agreement, stating that while it had met the first two goals of the rehabilitation plan, the third goal of increasing written premium volume had not been met. Rather than meeting the required volume of at least $150,000, Clemens–Hall had written premium volume for the entire year in the amount of $50,003. The letter continued to state that the termination was in accordance with Act 143, and under Section 242(d) of that Act,[2] Clemens–Hall could request that

(6) Upon request of administrative review pursuant to subsection (d), it shall be the obligation of the insurer to demonstrate to the Insurance Commissioner that it has made a reasonable attempt to rehabilitate such agent.

2. That section provides that any agent may, if within 30 days of receipt of notice of termination, request in writing to the Insurance Commis-

the Insurance Commissioner review the termination for the purpose of determining if it was in compliance with the provisions of the Act. Ohio Casualty also sent a letter on that same date to the Insurance Commissioner indicating that although it had made a reasonable attempt to rehabilitate Clemens–Hall in accordance with Section 242(e) of Act 143,[3] it was terminating its agency contract because the goals of the rehabilitation plan had not been met.

Clemens–Hall requested a hearing by the Insurance Commissioner regarding the termination of its agency contract. Prior to that hearing, the Insurance Commissioner sent a letter to both Ohio Casualty and Clemens–Hall stating that Act 143 governed the termination of contracts in effect for more than four years by requiring an attempt to rehabilitate the agency and providing for the continuation of business and the payment of commission following the contract termination. Further, pursuant to Section 242(f)(6) of Act 143, Ohio Casualty would have the burden of proving at the hearing that it made a reasonable attempt to rehabilitate Clemens–Hall before termination, and that the contract would remain in force until the conclusion of the review.

Ohio Casualty responded by sending a letter to the Insurance Commissioner claiming that even though it tried to rehabilitate Clemens–Hall, it had no legal obligation to do so. It stated that Act 143 was inapplicable because Section 241.-1(b)(2) of that Act[4] specifies that Act 143 does not apply to any agency contract in effect for less than four years, and the contract between the parties was signed on May 1, 1989,

sioner that the Insurance Commissioner review the action of the insurer for the purpose of determining that said termination was in compliance with the provisions of this act.

3. Section 242(e) of Act 143 provides in relevant part that prior to termination due to adverse experience, mix of business or lack of premium volume, it shall be the obligation of the insurer to make a reasonable attempt to rehabilitate such agent as set forth in subsection (f).

4. Act of September 22, 1978, P.L. 763, No. 143, § 1.1, added December 18, 1987, P.L. 418, § 2.

approximately two years prior to Clemens–Hall being placed on rehabilitation.

At the hearing, the hearing examiner, who was designated by the Insurance Commissioner,[5] heard testimony from both parties as to whether Act 143 applied to the termination of the contract, whether the goals established in the rehabilitation plan were reasonable, and whether Ohio Casualty made a reasonable attempt to assist Clemens–Hall in meeting those goals. The hearing examiner initially determined that Act 143 applied to this particular contract, finding that the agency relationship began in 1954 and continued through 1990 because the conduct of the parties supported using the total years of all of their business relationships. Next she determined that the goals set by Ohio Casualty in the rehabilitation plan were reasonable, but that it did not make a reasonable attempt to help Clemens–Hall meet those goals and actually thwarted an attempt by Clemens–Hall to place business with Ohio Casualty. She then directed Ohio Casualty to cease and desist from terminating its contract with Clemens–Hall and rescinded its notice of termination dated June 23, 1992. This appeal by Ohio Casualty followed.[6]

Ohio Casualty contends that the Insurance Commissioner incorrectly determined that the provisions of Act 143 were applicable to this case because the Clemens–Hall contract was in effect for less than four years. Ohio Casualty points out that the Insurance Commissioner made her decision on the basis that its current agency contract with Clemens–Hall was a continuation of the contract between itself and the Fenstermacher Agency which terminated on April 30, 1989, and

5. Agency terminations under Act 143 may be reviewed by the Insurance Commissioner or her designee. *Norwood A. McDaniel Agency v. Foster*, 117 Pa.Commonwealth Ct. 227, 543 A.2d 155 (1988).

6. Our scope of review of a decision of the Insurance commissioner is limited to determining whether an error of law has been committed, whether constitutional rights have been violated and whether findings of fact are supported by substantial evidence. *Charles P. Leach Agency, Inc. v. Foster*, 133 Pa.Commonwealth Ct. 425, 576 A.2d 1156 (1990); *petition for allowance of appeal denied*, 527 Pa. 619, 590 A.2d 759 (1991).

therefore, had been in effect for four years at the time Clemens–Hall was placed on rehabilitation. However, Ohio Casualty argues that even though the Insurance Commissioner determined that the continuation of the contract was based on Ohio Casualty's long-standing relationship with Drew Hall, the principal of the Fenstermacher Agency who eventually became one of the principals of Clemens–Hall, the previous contract was with the Fenstermacher Agency, not Drew Hall personally. As such, there was no basis for treating the contract with Clemens–Hall as a continuation of the agreement with the Fenstermacher Agency.

■ The core of Ohio Casualty's argument relies on what it refers to as the "unambiguous text of Act 143", or 40 P.S. § 241.1(b)(2), in concluding that Clemens–Hall's contract was in effect less than four years and exempt from scrutiny under Act 143. That section provides:

(b) **Nonapplicability.** The provisions of this act do not apply to:

(2) any agency contract in effect for less than four years.

However, what is considered a "new" "agency contract" or a continuation of an "old" one is not defined. Just as with other types of contracts, whether the contract between Ohio Casualty and Clemens–Hall was considered to be a new contract or merely a continuation of the old contract with the Fenstermacher Agency is controlled by the intent of the parties. *Department of Transportation v. Bracken Construction Company,* 72 Pa.Commonwealth Ct. 620, 457 A.2d 995 (1983). To determine intent, we must, as did the hearing examiner, look to the conduct of the parties, their prior dealings, as well as how they viewed the contract. *Id.*

■ When the Fenstermacher Agency merged with Clemens–Hall, Ohio Casualty reissued to Clemens–Hall the same agency contract it had with the Fenstermacher Agency. Clemens–Hall assigned the same producer codes to its business that had been previously assigned to business produced by the Fenstermacher Agency. Also, the parties considered the Clemens–Hall contract to be a continuation of the Fenstermacher

contract and not a new agency agreement by attributing the Fenstermacher book of business to Clemens–Hall effective May of 1989. Only when Clemens–Hall requested a hearing did Ohio Casualty say that Act 143 was not applicable. Prior to that time, it notified Clemens–Hall that its rehabilitation and termination was pursuant to that Act. While the contract with Clemens–Hall is clearly dated May 1, 1989, and appears on the surface to be a contract in existence for less than four years as required for exemption from Act 143, that date is not indicative of the true business relationship between the parties involved in the Clemens–Hall contract.

The purpose of Act 143 is to prevent the indiscriminate termination of agency contracts by insurers and to provide a more stable marketplace for insurance consumers. By merely performing a mechanical analysis as Ohio Casualty suggests, those purposes would be thwarted because termination of agencies would be allowed without rehabilitation no matter what the parties intended when they entered into the contract. Were we to adopt Ohio Casualty's mechanical approach, if Ohio Casualty merged into another insurance company, the successor company could terminate any agency without rehabilitation because "new" contracts would be entered into between the agents and the "new" company. Such a result is not what the legislature intended to be the result when it enacted Act 143. Consequently, because the intent of the parties was that the Fenstermacher Agency business under its contract with Ohio Casualty which was transferred to Clemens–Hall be a continuation of the existing Fenstermacher Agency contract under a different name, we agree with the hearing examiner that Act 143 is applicable as that 1954 contract was in effect well over four years.

Ohio Casualty then argues that even if Act 143 applies, the Insurance Commissioner erred in determining that it had not made reasonable attempts to rehabilitate Clemens–Hall as required by 40 P.S. § 242(e). It specifies that its Regional Manager, Robert Foster (Foster), made three personal visits to Clemens–Hall to inform it of product development and to help it increase volume, and Clemens–Hall was sent letters

during the rehabilitation period stressing the need to increase its growth.

Whether an insurer has made a reasonable attempt to rehabilitate an insurance agent so that an agency contract may be terminated is to be decided on a case-by-case basis. *The Travelers Indemnity Company v. Insurance Department,* 126 Pa.Commonwealth Ct. 41, 558 A.2d 568 (1989). The hearing examiner noted that the three personal visits during the one year of rehabilitation constituted nothing more than routine business contacts. When she asked Foster what transpired during one of these visits, he responded:

> On a visitation like this, what we usually do is try to keep an agency informed as to new products, ways that perhaps they could increase their writings with the company, any problems the agency may be encountering in writing business, any problems that we may have that the agency wishes to discuss, and we'll usually bring to their attention the fact that perhaps they're not reaching the goals of the program. (Reproduced Record at 47a.)

When further pressed if he recalled the specific ways he had suggested that Clemens–Hall could reach their goals, he responded that he did not. (Reproduced Record at 47a.)

The hearing examiner also asked Foster what type of information he provided Clemens–Hall on a regular basis regarding reaching their goals. He responded that he would provide production reports to them on a bi-monthly basis and go over some of the letters that were sent to the agency. (Reproduced record at 47a.) However, the production reports were sent to all agencies, and the four letters sent to Clemens–Hall after the rehabilitation program and goals were initially explained were nothing more than an update as to Clemens–Hall progress as understood by Ohio Casualty.[7] At

---

7. For example, the July 22, 1991 letter from Ohio Casualty to Clemens–Hall only indicated that there was an increase in premiums "which was encouraging and to keep the goals of the program in line as the year progressed." Similarly, the December 10, 1991 letter reiterated the goals of the program and stated that, "Your 10 month report indicates a favorable loss ratio and an increase in volume, however, we still have a

158

no time did they offer advice or guidance to help Clemens–Hall reach the proposed goals.

█ More importantly, the hearing examiner found that Ohio Casualty restricted new business by rejecting Clemens–Hall's offer to place a policy for the Bi–Lo Stores, but accepted it when offered through a broker. Although Ohio Casualty argues that it is against company policy to accept brokerage business and denies any knowledge of this transaction as it was handled through another branch office, the hearing examiner did not find Ohio Casualty credible on this issue, and findings by the Insurance Commissioner or her designee representing credibility determinations are not reviewable on appeal. *B.G. Balmer & Company v. Insurance Commissioner*, 114 Pa.Commonwealth Ct. 239, 538 A.2d 968 (1988). As succinctly stated in *Travelers Indemnity:*

> [W]hile we acknowledge the predicament in which Travelers finds itself in maintaining a persistently unprofitable agency, we also recognize the legislative mandate of Act 143, which requires an insurer to make *reasonable* efforts at rehabilitation prior to terminating an agency that has established a clientele for that insurer. Under the Act, an insurance company cannot be forced to continue unprofitable operations indefinitely.... However, once an agency is established, there arises a duty to sustain that relationship to the benefit, at least in part, of those insureds who may have great difficulty in obtaining such insurance from other similarly disenchanted insurance companies. (Emphasis in original.)

*Id.*, 126 Pa.Commonwealth Ct. at 47–48, 558 A.2d at 571.

█ Consequently, because there is substantial evidence to support the hearing examiner's finding that Ohio Casualty did not make a reasonable effort to rehabilitate Clemens–Hall as

long way to go on the volume requirement. We feel this is going in the right direction at this time." Lastly, the February 20, 1992 letter indicated that "While there has been an increase in your volume, we still have a ways to go. The loss ratio is good, but we do need increased growth. If you have any question, we would appreciate hearing from you."

required by Act 143, the hearing examiner, acting on behalf of the Insurance Commissioner, properly ordered Ohio Casualty to cease and desist from terminating its agency contract with Clemens–Hall.

Accordingly, the decision of the Insurance Commissioner is affirmed.

## ORDER

AND NOW, this 18th day of October, 1993, the decision of the Insurance Commissioner in her letter dated December 8, 1992, is affirmed.