Mallissa L. and Chris A. WEAVER,
Appellants,

v.

Walter W. HARPSTER & Shipman
Financial Services, et al.,
Appellee,

Superior Court of Pennsylvania.

Submitted July 25, 2005.
Filed Oct. 21, 2005.
Reargument Denied Dec. 20, 2005.

Roger V. Wiest, II, Sunbury, for appellants.

Elinor C. Marsalisi and Michael J. Zicolello, Williamsport, for appellee.

BEFORE: GANTMAN, OLSZEWSKI and MONTEMURO *, JJ.

---

* Retired Justice assigned to Superior Court.

1. Appellant Mallissa Weaver's husband, Chris Weaver, seeks damages only on the derivative claim for loss of consortium. Therefore, we will refer to Mallissa Weaver as the appellant.

## OPINION BY MONTEMURO, J.:

¶ 1 This is an appeal from an order sustaining Appellees' preliminary objections and dismissing Appellants' complaint in an action based on allegations of sexual harassment. Appellant Mallissa Weaver presents the question of whether Pennsylvania recognizes a common law cause of action for wrongful discharge of an at-will employee based on allegations of sexual harassment where the defendant employer does not meet the definitional standards of the Pennsylvania Human Relations Act (PHRA), 43 P.S. § 953(b).

¶ 2 In August of 2001, Appellant [1] was hired as an administrative assistant and office manager by Appellees. During the year of her employment, she was allegedly subjected to continual sexual harassment by Appellee Walter Harpster to the point that she resigned in July of 2002 because of the intolerable conditions, and Appellees' failure to take appropriate remedial action. Her subsequent request that the Pennsylvania Human Relations Commission (PHRC) investigate her allegations of discrimination was denied on the basis that no remedy was available to her under the Act because Appellees, having less than four employees, did not meet the statutory definition of "employer." [2]

¶ 3 Following the PHRC's rejection of her claim, Appellant commenced an action in common pleas court alleging sexual harassment, discrimination and harassment in violation of the PHRA, constructive discharge in violation of the PHRA, wrongful discharge, assault and battery, invasion of privacy, and loss of consortium. Appellees' preliminary objections were

---

2. 43 P.S. § 953(b) states, "[t]he term "employer" includes the Commonwealth or any political subdivision or board, department, commission or school district thereof and any person employing four or more persons within the Commonwealth ...."

sustained by the trial court which also entered an order on June 28, 2004, dismissing counts 1 through 5, and leaving only the assault and battery claim to proceed to trial. The jury returned a verdict in favor of Appellee Harpster. This appeal followed, in which Appellant requests reversal of two counts of her amended complaint dismissed in the trial court's June 28, 2004, Order: count III, regarding discrimination and harassment, and count IV, regarding constructive discharge.

■ ¶ 4 Appellant urges us to find a public policy exception to the at-will employment doctrine, since it would be both arbitrary and against public policy to foreclose all avenues of relief for victims of sexual harassment; after having exhausted administrative remedies in approaching the PHRC, she was precluded from relief under the statute only because Appellees employ less than four people, not because her claim was inherently deficient.

¶ 5 Our Supreme Court has opined that [p]reliminary objections should be sustained only in cases that are clear and free from doubt. In ruling on whether preliminary objections were properly sustained, an appellate court must determine whether it is [ ] clear from all the facts pleaded that the pleader will be unable to prove facts legally sufficient to establish a right to relief. There must exist a degree of certainty that the law will not provide relief based on the facts averred.

*Uniontown Newspapers, Inc. v. Roberts,* 576 Pa. 231, 839 A.2d 185, 196 (2003) (citations and quotation marks omitted).

¶ 6 The trial court, in sustaining Appellees' preliminary objections, relied on *Clay v. Advanced Computer Applications,* 522 Pa. 86, 559 A.2d 917 (1989), for the proposition that the PHRA is the exclusive remedy for any type of employment discrimination based on sex. Therefore, the court reasoned that since the PHRA provides no remedy for Appellant, she has none.

¶ 7 *Clay,* however, is not only distinguishable, but also provides otherwise than the trial court found. First, the issue before the *Clay* Court concerned an at-will employee who sought to bring a legal action for wrongful termination based on sexual harassment and discrimination without first exhausting administrative remedies. The appellees in *Clay* had failed to seek redress initially through the PHRC for their allegedly discriminatory discharge, and were therefore barred from recourse to the courts. It is clear that subsequent to *Clay,* the rule continues to be that exhaustion of administrative remedies is a necessary precondition to an employee's attempt to prove a "clear mandate of public policy" in order to bring a cause of action for sexual discrimination. *See Carlson v. Community Ambulance Services, Inc.,* 824 A.2d 1228, 1232 (Pa.Super.2003); *Shick v. Shirey,* 552 Pa. 590, 716 A.2d 1231 (1998).

¶ 8 However, the *Clay* Court did not conclude that there is no alternative to the PHRA as an avenue of relief for sexual discrimination. On the contrary, while definitively prohibiting circumvention of the Act, the Court specifically noted that although initially recourse must be had to the PCRC,

aggrieved parties are not deprived of their **ultimate** resort to the courts. It is provided in section 962(c) of the PHRA that the rights of a complainant thereunder shall not be foreclosed from being pursued in the courts, if, within one year after the filing of a complaint, the PHRC dismisses the complaint or fails to enter a conciliation agreement to which the complainant is a party.

*Clay, supra* at 920 (emphasis original).

■ ¶ 9 Appellant's approach to the Commission and its rejection of her re-

quest were well within the one year time frame, both having occurred within one month. Thus the basis on which the Commission rejects a claim is immaterial to the question of its later justiciability. Here, the nature of the issue presented is indubitably one contemplated by the statute; the problem is entirely contextual.

 ¶ 10 It is well established that Pennsylvania does not recognize a common law cause of action against an employer for the termination of an at-will employee. *See Geary v. U.S. Steel Corporation,* 456 Pa. 171, 319 A.2d 174 (1974); *Clay, supra.* However, where it is clear that a well-established public policy would be subverted, a court may find an exception to this normally rigid edict. *See Highhouse v. Avery Transportation,* 443 Pa.Super. 120, 660 A.2d 1374 (1995); *Kroen v. Bedway Security Agency, Inc.,* 430 Pa.Super. 83, 633 A.2d 628 (1993); *Field v. Philadelphia Electric Co.,* 388 Pa.Super. 400, 565 A.2d 1170 (1989). The principle to be applied in determining when an exception may have occurred is well-settled:

> It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring. There must be a positive, well-defined, universal public sentiment, deeply integrated in the customs and beliefs of the people and in their conviction of what is just and right and in the interests of the public weal.

*Mamlin v. Genoe,* 340 Pa. 320, 17 A.2d 407, 409 (1941).

 ¶ 11 Further, "[t]o state a public policy exception to the at-will employment doctrine, the employee must point to a clear public policy articulated in the constitution, in legislation, an administrative regulation, or a judicial decision." *Hunger v. Grand Central Sanitation* 447 Pa.Super. 575, 670 A.2d 173, 175 (1996), *appeal denied,* 545 Pa. 664, 681 A.2d 178 (1996) (citing *Jacques v. Akzo International Salt, Inc.,* 422 Pa.Super. 419, 619 A.2d 748 (1993)).

¶ 12 Appellant contends "that there is a clear mandate of public policy against sexual discrimination and/or sexual harassment in the workplace." (Appellant's Brief at 12). First, she argues that there is a constitutional right to be free from discrimination based on sex pursuant to Article I, Section 28 of the Pennsylvania Constitution, which states "[e]quality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual." Pa. Const. art. I, § 28. Appellant argues that her inability to bring a claim for sexual discrimination denies her equality of rights based on sex.[3] Appellant also contends that the PHRA "bestows a right to be free from discrimination based on sex in the workplace." *See Clay, supra* at 919. Therefore, the prevention of discrimination based on sex is established in Pennsylvania legislation. In reliance upon this authority, Appellant contends that

---

3. Justice Zappala's concurrence in *Clay, supra,* further develops this argument:

> I, for one, would be loathe to intimate ... that this Court would not acknowledge that the Commonwealth has recognized a public policy favoring the equal treatment of employees without regard to sex. No more clear statement of public policy exists than of a constitutional amendment. The pas-

sage of the Pennsylvania Equal Rights Amendment, Article I, § 28 is the expression of public policy. I will not eliminate the possibility that our developing body of common law would encompass a cause of action for wrongful discharge arising out of sexual discrimination once that issue is before us.

*Clay, supra* at 924 (Zappala, J., concurring).

there is a clear public policy against sexual discrimination which was introduced in the Pennsylvania Constitution, espoused in the PHRA, and recognized in the courts of this Commonwealth. *Wolk v. Saks Fifth Avenue, Inc.,* 728 F.2d 221 (3rd Cir.1984).

█ ¶ 13 Further, the PHRA specifically establishes sex discrimination as a cause of action related to remedy, *i.e.,* "that which produces or effects the results complained of." *Noonan v. Pardee,* 200 Pa. 474, 50 A. 255, 256 (1901). Our Supreme Court in *Ieropoli v. AC & S Corp.,* 577 Pa. 138, 842 A.2d 919, 929–30 (2004), albeit in a different context, explained that a cause of action *qua* remedy "is the vehicle by which a person secures redress for the consequences of a legal injury." That is the situation herein. Because sex discrimination is prohibited under both the equal rights provision of the Pennsylvania Constitution and the PHRA, it constitutes a legal injury whose recompense is mandated by the remedies clause, Article I, Section 11, of the Pennsylvania Constitution, which provides in pertinent part that

> [a]ll courts shall be open; and every man for an injury done him in his lands, goods person or reputation shall have remedy by due course of law; and right and justice administered without sale, denial or delay.

Pa. Const. art. I, § 11 (Courts to be open; suits against the Commonwealth).

¶ 14 It is difficult to believe that the Legislature would first define certain acts as illegal via both the Constitution and statute, thus establishing a public policy unequivocally condemning such conduct, and then remove all judicial recourse for the victims of that conduct. We therefore agree with Appellant's contention that a public policy exception is appropriate for her situation. In this context we find persuasive the conclusion reached by the Third Circuit Court of Appeals that: "[a]

discharge in retaliation for the refusal by a woman employee to succumb to sexual advances would abridge a significant and recognized public policy against sexual discrimination in employment." *Wolk, supra* at 222–23. To prevent an employee who is alleging sexual harassment from pursuing her claim in court only because her employer has less than four employees appears a direct contravention of a clear public policy on grounds both quixotic and arbitrary. She has followed the necessary procedures to obtain redress for her grievance: initially discussing it directly with her superiors and then appealing to the administrative agency charged with the authority to settle such disputes. Following her dismissal by the PHRC, she turned to the courts as a last resort. To prevent Appellant from, at minimum, having her case heard in court would violate "a positive, well-defined, universal public sentiment, deeply integrated in the beliefs of the people and in their conviction of what is just and right and in the interests of the common good." *Rothrock v. Rothrock Motor Sales, Inc.,* 810 A.2d 114 (Pa.Super.2002), *appeal granted,* 574 Pa. 704, 833 A.2d 138 (2003).

¶ 15 Appellees argue that a common law cause of action for sexual discrimination would "contravene the legislature's intent to limit employment discrimination claims to employers with four employees or more." (Appellees' Brief at 8). They further contend that any complaint by Appellants should be directed to the Pennsylvania General Assembly and not to this Court.

¶ 16 We do not construe the Legislature's decision to regulate only those employers with more than four employees as a tacit endorsement of sexual discrimination against their employees; there remains a clear public policy to prevent sexu-

al discrimination in the workplace. Again, *Mamlin, supra,* is instructive:

> Public policy, in the administration of the law by the courts, is essentially different from what may be public policy in the view of the legislature. With the legislature, it may be and often is, nothing more than expediency. The public policy which dictates the enactment of a law is determined by the wisdom of the legislature. Public policy ... with [the legislature] ... may be and often is, "nothing more than expediency"; but with [the courts], it must, and may only be a reliance upon consistency with sound policy and good morals as to the consideration or the thing to be done.

*Id.* at 409 (citations omitted). Therefore, where an employee is prevented from bringing a sexual discrimination suit under the PHRA only because his or her employer has less than four employees, we find a public policy exception to the at-will employment doctrine.

¶ 17 Order vacated. Case remanded for further proceedings consistent with this Opinion. Jurisdiction relinquished.