Lisa DILLON, Appellant

v.

**HOMEOWNER'S SELECT, AFFINITY INSURANCE SERVICES, INC.,
Appellee.**

Superior Court of Pennsylvania.

Submitted Jan. 8, 2008.

Filed Sept. 29, 2008.

Sidney L. Gold, Philadelphia, for appellant.

Kristine G. Derewicz, Philadelphia, for appellee.

BEFORE: BOWES, DONOHUE and POPOVICH, JJ.

OPINION BY DONOHUE, J.:

¶ 1 In a case of first impression, we address whether Appellant Lisa Dillon

("Dillon") may assert a cause of action for money damages against a private employer for gender-based discrimination under the Equal Rights Amendment of the Pennsylvania Constitution. Pa. Const., art. I, § 28. We conclude that there is no private right of action for damages against a private employer under the Equal Rights Amendment and therefore affirm the trial court's dismissal of Dillon's case.

¶ 2 In July 2002, Dillon sought and obtained employment from Homeowner's Select, Affinity Insurance Services, Inc. ("Homeowner's"). In or around December 2003, Dillon's immediate supervisor, Charles Horta ("Horta"), allegedly began making sexually offensive comments to Dillon and engaging in sexually offensive conduct towards her. Despite Dillon reporting these actions to Homeowner's customer service manager, Horta's behavior continued until March 2004, when Dillon voluntarily transferred to another department.

¶ 3 On February 8, 2006, Dillon filed a civil complaint against Homeowner's in the Court of Common Pleas of Montgomery County, alleging gender discrimination in violation of the Pennsylvania Equal Rights Amendment. Prior to filing her complaint in state court, she did not exhaust potential administrative remedies under the Pennsylvania Human Rights Act, 43 P.S. §§ 951–963 (the "PHRA").[1] On June 1, 2006, Homeowner's filed preliminary objections in the nature of a demurrer, arguing (1) that no cause of action exists against a private employer under the Equal Rights Amendment, and (2) even if such a cause of action does exist, state courts would have jurisdiction to consider it only if the complainant first exhausted all available administrative remedies under

the PHRA with the Pennsylvania Human Rights Commission (the "PHRC").

¶ 4 Following oral argument, the trial court granted Homeowner's preliminary objections and dismissed Dillon's complaint for lack of jurisdiction. In its decision, the trial court began by noting that the Supreme Court of Pennsylvania has not addressed whether a private right of action for damages exists under the Pennsylvania Equal Rights Amendment. The trial court also acknowledged, however, that the United States Court of Appeals for the Third Circuit has predicted in dicta that such a private cause of action for damages may exist. *Pfeiffer v. Marion Center Area School District,* 917 F.2d 779, 789 (3d Cir. 1990) ("damages may be available under the state ERA"). The trial court based its decision on the reasoning in another federal case, *Jespersen v. H & R Block Mortgage Corp.* 2006 WL 1997372 (E.D.Pa., July 13, 2006). In *Jespersen,* Judge Schiller of the United States District Court for the Eastern District of Pennsylvania ruled that a private cause of action for damages does exist under the Pennsylvania Equal Rights Amendment. *Id.* at *3 (relying on *Pfeiffer*). Judge Schiller also ruled, however, that the administrative procedures of the PHRA are mandatory for all employment discrimination claims and may not be circumvented in any case. *Id.* at *5 (citing *Clay v. Advanced Computer Applications, Inc.,* 522 Pa. 86, 559 A.2d 917 (1989)). The trial court therefore dismissed Dillon's complaint because she failed to exhaust her administrative remedies under the PHRA framework.

■ ¶ 5 This appeal followed, in which Dillon raises a single question for our review:

---

1. Dillon also did not seek any federal administrative remedies with the Equal Employ- ment Opportunity Commission.

Whether the trial court erred in dismissing [Dillion's] complaint and determining that [Dillon] was required to exhaust administrative remedies through the PHRC in order to assert her claims of sexual harassment and sex discrimination under the PERA?

Appellant's Brief at 4. We decline to address this question directly, however, because we conclude that no private right of action for damages exists against a private employer for sex discrimination under Pennsylvania's Equal Rights Amendment. As a result, the issue regarding exhaustion of administrative remedies under the PHRA is moot.

¶ 6 The voters of the Commonwealth of Pennsylvania adopted the Pennsylvania Equal Rights Amendment on May 18, 1971. It provides:

### § 28. Prohibition against denial or abridgement of equality of rights because of sex

Equality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual.

Pa. Const., art. I, § 28.

¶ 7 In an early case, our Supreme Court described the purpose of the new constitutional amendment:

The thrust of the Equal Rights Amendment is to insure equality of rights under the law and to eliminate sex as a basis for distinction. The sex of citizens of this Commonwealth is no longer a permissible factor in the determination of their legal rights and responsibilities. The law will not impose different benefits or burdens upon the members of a society based on the fact that they may be man or woman.

*Henderson v. Henderson*, 458 Pa. 97, 101, 327 A.2d 60, 62 (1974).

¶ 8 Since its passage, Pennsylvania courts have applied the Equal Rights Amendment in a wide variety of contexts. *See, e.g., Simeone v. Simeone*, 525 Pa. 392, 399, 581 A.2d 162, 165 (1990) (rejecting "[p]aternalistic presumptions and protections that arose to shelter women" in the enforcement of prenuptial agreements); *Adoption of Walker*, 468 Pa. 165, 360 A.2d 603 (1976) (holding that Adoption Act violates Equal Rights Amendment by requiring parental consent only from unwed mother); *Commonwealth v. Santiago*, 462 Pa. 216, 340 A.2d 440 (1975) (rejecting presumption that wife who commits crime in presence of husband was coerced by husband); *DiFlorido v. DiFlorido*, 459 Pa. 641, 331 A.2d 174 (1975) (abolishing presumption that husband owns all household goods possessed by both spouses); *Commonwealth v. Butler*, 458 Pa. 289, 328 A.2d 851 (1974) (holding that statutory scheme providing for immediate eligibility of parole for women upon imprisonment, but not for men, was unconstitutional); *Hopkins v. Blanco*, 457 Pa. 90, 320 A.2d 139 (1974) (permitting both husband and wife to recover for loss of consortium); *cf. Rollman Estate*, 71 D. & C.2d 6 (C.P.Lancaster Co.1975) (abolition of rule that husband, but not wife, is primarily liable for funeral expenses of deceased spouse).

¶ 9 Although in some sense these cases all involved discrimination in connection with private disputes, in every case the offending discrimination was not perpetrated by private actors but rather had its roots in the statutory or judicially created law of this Commonwealth. The first opportunity for our Supreme Court to address the scope of application of the Equal Rights Amendment came in *Hartford Accident and Indemnity Co. v. Insurance Commissioner*, 505 Pa. 571, 482 A.2d 542 (1984). In *Hartford*, a man filed a complaint with the Pennsylvania Insurance Commissioner alleging that Hartford's

gender-based automobile insurance rates obligated him to pay $148 more per year than would a similarly situated female for the same coverage. The Insurance Commissioner, interpreting the requirement under the Casualty and Surety Rate Regulation Act, 40 P.S. 1183(d) (hereinafter, the "Rate Act"), that rates not be "unfairly discriminatory," concluded that Hartford's rates violated Pennsylvania's public policy against gender discrimination (as memorialized in the Equal Rights Amendment) and were therefore invalid. Hartford appealed this ruling to the Commonwealth Court of Pennsylvania, which affirmed in an *en banc* decision. *Hartford Accident and Indemnity Co. v. Insurance Commissioner*, 65 Pa.Cmwlth. 249, 442 A.2d 382 (1982) (*en banc*).

¶ 10 Our Supreme Court affirmed the Commonwealth Court's decision, concluding that "the Pennsylvania Constitution's clear and unqualified prohibition of discrimination 'under the law' based upon gender" compelled the Insurance Commissioner's "appropriate exercise of his statutory authority" to invalidate Hartford's gender-based rates. *Hartford*, 505 Pa. at 586, 482 A.2d at 549. In so ruling, the Supreme Court provided a clear and definitive statement on the proper scope and application of the Equal Rights Amendment:

> The text of Article I, section 28 makes clear that its prohibition reaches sex discrimination *"under the law."* **As such, it circumscribes the conduct of state and local government entities and officials of all levels in their formulation, interpretation and enforcement of statutes, regulations, ordinances and other legislation as well as decisional law.** The decision of the Commissioner in a matter brought pursuant to the Rate Act is not only 'under the law' but also, to the extent his adjudication is precedent on the question decided, 'the law.'

*Hartford*, 505 Pa. at 586, 482 A.2d at 549 (emphasis added).

¶ 11 In establishing the scope of the Equal Rights Amendment in *Hartford*, our Supreme Court rejected Hartford's argument that the Insurance Commissioner's invalidation of sexually discriminatory rates constituted an improper interference in a transaction between private actors (a policyholder and his insurance company), and therefore constituted an improper application of Pennsylvania's Equal Rights Amendment in the absence of "state action". The federal "state action"[2] doctrine has been developed over time by federal courts to define the scope of application of some amendments to the United States Constitution, including in particular the guarantee of equal protection under the Fourteenth Amendment.[3] Although the text of the Fourteenth Amendment[4] sug-

---

**2.** The phrase "state action" is a bit of a misnomer because it has been applied to all levels of government, including the federal government. As one commentator has noted, "all problems relating to the existence of government action—local, state or federal—which would subject an individual to constitutional restrictions come under the heading of 'state action'". TREATISE ON CONSTITUTIONAL LAW, Rotunda & Nowak, § 16.1 at 996.

**3.** Federal courts have applied the "state action" doctrine selectively. It has never been applied to the Thirteenth Amendment's prohibition against slavery, for example. That prohibition applies equally whether a private person or a governmental entity attempts to enslave a person.

**4.** "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law...." U.S. Const., amend. 14, § 1.

gests that it only restricts the freedom of states to enact certain types of laws or take certain types of actions, over time federal courts have allowed application of the Fourteenth Amendment to restrict the actions of private entities in situations where there is a sufficient connection between the state and the private entity to establish that the state provided significant aid to the individual, acted as a partner with the individual, or permitted the individual to perform an essential "state function". *See, e.g., Evans v. Newton,* 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966); *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961); *Terry v. Adams,* 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953); *c.f., Civil Rights Cases,* 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883) (although the federal Equal Protection Clause applies to "(s)tate action of every kind," it does not prohibit the "individual invasion of individual rights.").

¶ 12 In *Hartford,* our Supreme Court made clear that the "state action" doctrine has no application in determining the scope of the Pennsylvania Equal Rights Amendment.

[T]he notion that the interpretation of this insurance statute involves the concept of "state action" is incorrect in this context. The "state action" test is applied by the courts in determining whether, in a given case, a state's involvement in private activity is sufficient to justify the application of a federal constitutional prohibition of state action to that conduct. **The rationale underlying the "state action" doctrine is irrelevant to the interpretation of the scope of the Pennsylvania Equal Rights Amendment, a state constitutional amendment adopted by the Commonwealth as part of its own organic law. The language of that enactment, not a test used to measure the extent of federal constitutional protections, is controlling.**

*Id.*[5] (emphasis added).

¶ 13 In sum, our Supreme Court has defined the scope of application of the Equal Rights Amendment to gender-based discrimination *by state or local entities or officials,* including through statutes, official policies, and the rulings of its courts and administrative agencies. This position accords with our state constitutional jurisprudence generally, a basic tenet of which is that the provisions of Article I of the Pennsylvania Constitution are intended to govern only the actions of the state government. *See, e. g., Commonwealth v. National Gettysburg Battlefield Tower, Inc.,* 454 Pa. 193, 200, 311 A.2d 588, 592 (1973). Our state constitution establishes a government of general powers, which possesses all powers not specifically denied to it. *Commonwealth v. Wormser,* 260 Pa. 44, 46, 103 A. 500, 501 (1918). The powers specifically denied to the state government are set forth in Article I (sometimes called the "Declaration of Rights"), which, as eloquently described in section 25, may never be violated by the state government:

**§ 25. Reservation of powers in people**

To guard against transgressions of the high powers which we have delegated,

---

**5.** *See also Hartford,* 505 Pa. at 588–89, 482 A.2d at 550–51 ("Given our ERA's clear statement of public policy in Pennsylvania, I see no need to raise potential federal questions of (a) whether the setting of insurance rates involves "state action", (b) whether this state should adopt the standards developed under the Fourteenth Amendment for detecting its presence, or (c) how those standards should be defined ... On those issues I express no opinion, and, believing the Majority Opinion also refrains from such speculation, I join it.") (Hutchinson, J., concurring).

we declare that everything in this article is excepted out of the general powers of government and shall forever remain inviolate.

Pa. Const., art. I, § 25.

¶ 14 Based upon the dictates of section 25, our Supreme Court has observed that:

> It is absurd to suggest that the rights enumerated in Article I were intended to restrain the power of the people themselves. Such a proposition loses sight of the basic overriding principle of American government—that all power is in the people. . . .

> The restraint imposed under Article I is not upon the people in forming their government, but rather upon the government in the discharging of its functions under the direction of that constitution. Article I does not restrain the power of the people, it restrains the government structure that the people have created.

*Gondelman v. Commonwealth*, 520 Pa. 451, 467–69, 554 A.2d 896, 904–05 (1989).

¶ 15 A year after the Supreme Court's decision in *Hartford*, this Court decided *Welsch v. Aetna Insurance Co.*, 343 Pa.Super. 169, 494 A.2d 409 (1985). In *Welsch*, a class of male automobile operators brought claims under both the Fourteenth Amendment to the U.S. Constitution and the Pennsylvania Equal Rights Amendment, demanding rebates from their private insurance company after being charged sexually discriminatory insurance rates. The insurance company responded by filing preliminary objections, arguing that the complaint did not allege "state action" and thus failed to assert cognizable federal or state constitutional claims. The trial court, in a decision rendered before the Supreme Court's decision in *Hartford*, sustained the preliminary objections.

¶ 16 This Court affirmed the trial court's dismissal of the federal claim because of the lack of "state action" in the transaction between private policyholders and a private insurance company.[6] *Id.* at 411. Based upon the Supreme Court's intervening decision in *Hartford*, however, we reversed the lower court in its conclusion that "appellants failed to allege state action as to its claim of an E.R.A. violation. Such an averment is no longer necessary in light of the Supreme Court's announcement in *Hartford.*" *Id.* Instead, this Court affirmed the trial court's finding that it lacked jurisdiction to proceed because by statute the Pennsylvania Insurance Commissioner has the exclusive jurisdiction to order a remedy for an improper rate. *Id.*; *see* Rate Act, 40 P.S. § 1193(d).

¶ 17 In direct response to the Supreme Court's decision in *Hartford*, the Pennsylvania Legislature amended the Rate Act to permit insurance companies to base rates on factors like the sex (but not the race, religion or national origin) of the policyholder "if the use of such a factor is supported by sound actuarial principles or is related to actual or reasonably anticipated experience." Rate Act, § 3(e). Policyholders responded with an injunction action seeking to enjoin the Insurance

---

6. The trial court relied on a pre-*Hartford* decision of this Court, *Murphy v. Harleysville Mutual Ins. Co.*, 282 Pa.Super. 244, 422 A.2d 1097 (1980), in which we concluded that the involvement of the Pennsylvania Insurance Commissioner in approving the rates charged by insurance companies did not constitute "state action". In so ruling, we in turn relied upon a decision of the U.S. Supreme Court, *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), which held that state regulation of utility services did not convert interactions between Pennsylvania utility providers and their customers into "state action" for purposes of Fourteenth Amendment analysis. *Id.* at 1100–02.

Commissioner from enforcing this statutory amendment. In *Bartholomew v. Foster*, 115 Pa.Cmwlth. 430, 541 A.2d 393 (1988), the Commonwealth Court of Pennsylvania, exercising its original jurisdiction, granted the injunction. In so ruling, the Commonwealth Court reaffirmed the basic principle in *Hartford* that "insurance rates based on sexual classifications" do not "pass constitutional muster." *Id.* at 397.[7] The Commonwealth Court also noted that, in accordance with *Hartford,* "the presence or absence of state action does not preclude this Court from resolving the matter *sub judice,*" and that "[i]n order to invoke the provisions of the Pennsylvania Equal Rights Amendment, we conclude that there is no requirement of state action...." *Id.* at 396–97.[8]

¶ 18 Citing to both *Welsch* and *Bartholomew,* in *Pfeiffer v. Marion Center Area School District,* 917 F.2d 779 (3d Cir.1990), the United States Court of Appeals for the Third Circuit stated in *dicta* that a private right of action for compensatory damages exists against private employers under the Pennsylvania Equal Rights Amendment for sexual discrimination in the workplace. *Id.* at 789. Based upon *Pfeiffer,* some federal district courts, including Judge Schiller in the *Jespersen* decision relied upon by the trial court in this case, ruled that a private right of action for damages exists against private employers under the Pennsylvania Equal Rights Amendment. *See, e.g., Jespersen v. H & R Block Mortgage Corp.* 2006 WL 1997372 (E.D.Pa., July 13, 2006); *Barrett v. Greater Hatboro Chamber of Commerce, Inc.,* 2005 WL

2104319 (E.D.Pa. August 19, 2005); *Spirk v. Centennial School District,* 2005 WL 433321 (E.D.Pa. February 22, 2005); *EEOC v. Federal Express Corp.,* 537 F.Supp.2d 700, 2005 U.S. Dist. Lexis 5834 (M.D.Pa. January 18, 2005); *Imboden v. Chowns Communications,* 182 F.Supp.2d 453 (E.D.Pa.2002). Other Pennsylvania federal courts have not followed the Third Circuit's dicta, ruling to the contrary. *See, e.g., Walsh v. Irvin Stern's Costumes,* 2006 WL 166509, at *7 (E.D.Pa., January 19, 2006) (refusing to follow the dicta in *Pfeiffer* because *Welsch* and *Bartholomew* "do not hold that PERA establishes a private right of action"); *EEOC v. Dan Lepore & Sons Co.,* 2004 WL 569526, at *2 (E.D.Pa. Mar.15, 2004); *Ryan v. General Machine Products,* 277 F.Supp.2d 585, 595 (E.D.Pa. 2003).

¶ 19 While both *Welsch* and *Bartholomew* held that proof of "state action" is not required to invoke the Pennsylvania Equal Rights Amendment, neither case concluded that the Equal Rights Amendment establishes a right of action against private citizens or entities. Stated another way, while the appellate courts in both cases agreed that a plaintiff does not have to allege "state action" to invoke the Equal Rights Amendment, both courts also made clear that a plaintiff must assert that the discriminatory conduct at issue was perpetrated by a state or local entity or official "in their formulation, interpretation and enforcement of statutes, regulations, ordinances and other legislation as well as decisional law," as strictly required by our

---

**7.** The Commonwealth Court noted that the Insurance Commissioner's exercise of her statutory authority is basic to the imposition of rates by insurance companies: "[N]o insurance rates become effective until they have been deemed approved by the Insurance Commissioner." *Id.* at 396. Thus, as required by the Supreme Court to invoke the

Pennsylvania Equal Rights Amendment, the proscribed conduct was "under the law".

**8.** An equally divided Supreme Court affirmed the Commonwealth Court's *Bartholomew* decision without opinion. *Bartholomew v. Foster,* 522 Pa. 489, 563 A.2d 1390 (1989).

Supreme Court in *Hartford.* *Hartford,* 505 Pa. at 586, 482 A.2d at 549.

¶ 20 In both *Welsch* and *Bartholomew,* the state official was the Pennsylvania Insurance Commissioner, and in both cases the appellate court ruled that the Commissioner was required to interpret the Commonwealth's insurance statutes in a manner that complies with the Equal Rights Amendment. As such, both *Welsch* and *Bartholomew* are best understood as decisions enforcing the Supreme Court's decision in *Hartford.* In *Welsch,* this Court affirmed dismissal of a demand for rebates for insurance rates just determined in *Hartford* to be gender discriminatory (while indicating that plaintiff could instead seek relief directly from the Insurance Commissioner). And in *Bartholomew* the Commonwealth Court applied *Hartford's* clear disapproval of insurance rates based on sexual classifications to enjoin enforcement of a legislative amendment to the insurance statute the Supreme Court in *Hartford* had just ruled violative of the Equal Rights Amendment.

■ ¶ 21 Based upon the foregoing, we conclude that while section 28 of Article I of the Pennsylvania Constitution prohibits state and local government entities and officials from denying anyone equality of rights because of their sex, it does not circumscribe, prohibit, or limit the conduct of private citizens or private entities. As the Supreme Court provided in *Hartford,* the scope of the provisions of the Pennsylvania Constitution is measured exclusively by "the language of the enactment." *Hartford,* 505 Pa. at 586, 482 A.2d at 549. Nothing in the text of the Equal Rights Amendment suggests that it is intended to regulate the private conduct of the citizens of this Commonwealth. Nor does *Hart-*

*ford,* which addresses the Rate Act and the Insurance Commissioner's authority under it, provide the basis for the regulation of private conduct. As such, we have no basis on which to fabricate a new cause of action for sexual discrimination. Even if we were so inclined, we do not believe that an intermediate appellate court is best situated to analyze the diverse policy considerations that would be involved in defining the elements, defenses, and immunities of a new cause of action for damages for sex discrimination.

¶ 22 This Court's recent decision in *Weaver v. Walter W. Harpster & Shipman Financial Services,* 885 A.2d 1073 (Pa.Super.2005), does not compel a contrary result here. In *Weaver,* we allowed a plaintiff to proceed with a sexual discrimination lawsuit even though her private employer had less than four employees, which otherwise precluded her from asserting a claim under the PHRA. *Id.* at 1078. In so doing, we acknowledged that in the vast majority of cases, the PHRA is the exclusive remedy under Pennsylvania law for employment discrimination based on sex. *Id.* at 1075 (citing *Clay v. Advanced Computer Applications, Inc.,* 522 Pa. 86, 559 A.2d 917 (1989)). Recognizing this Commonwealth's strong public policy against gender discrimination as clearly expressed in both the Equal Rights Amendment and in the PHRA, we permitted a limited exception to Pennsylvania's at-will employment doctrine in circumstances "where an employee is prevented from bringing a sexual discrimination suit under the PHRA only because his or her employer has less than four employees." [9] *Id.* at 1078. In so doing, this Court made clear that *Weaver's* cause of action was a common law claim for wrongful discharge, *id.* at 1076, not a

---

**9.** Even in this circumstance, this Court recognized the importance of the statutory and administrative scheme established in the PHRA, noting that "[Weaver] has followed the necessary procedures to obtain redress for her grievance: initially discussing it directly with her superiors and then appealing to the administrative agency charged with the au-

direct claim for damages under the Equal Rights Amendment.[10]

¶ 23 In this case, the allegedly discriminatory conduct at issue did not result in the termination of Dillon's employment, and thus, unlike in *Weaver*, a common law claim for wrongful discharge was not available to her under any circumstances. Moreover, as determined hereinabove, the Pennsylvania Equal Rights Amendment does not establish a private right of action pursuant to which Dillon may state a claim for damages against her private employer (Homeowners). Homeowner's is a private entity and the allegedly offending discriminatory conduct about which Dillon is complaining was not perpetrated either by a state or local government entity or official or under the auspices of a discriminatory statute, rule or regulation. As a result, Dillon has not stated a claim cognizable under the Equal Rights Amendment of the Pennsylvania Constitution.[11]

¶ 24 Order affirmed.

---

thority to settle such disputes. Following her dismissal from the PHRC, she turned to the courts as a last resort." *Id.* at 1077.

**10.** The Pennsylvania Supreme Court has granted allowance of appeal in *Weaver. Weaver v. Harpster*, 592 Pa. 13, 922 A.2d 876 (2007). In so doing, the Supreme Court announced the principal issue to be: "Whether Pennsylvania recognizes a common law cause of action for discriminatory termination of at-will employment in cases where the employee is precluded from pursuing the remedy under the PHRA." *Id.* As such, it does not appear that the Supreme Court intends to address in *Weaver* the issue of whether the Equal Rights Amendment establishes a private right of action. *Cf. Aquino v. County of Monroe*, 2007 WL 1544980, at *4 (M.D.Pa. May 24, 2007) ("It is, of course, one thing to recognize a constitutional provision as expressive of public policy for purposes of a recognized cause

of action for wrongful discharge; it is quite another thing to create a direct cause of action for violation of the constitutional provision.").

**11.** Because we conclude that no cause of action exists under Pennsylvania law, we need not address whether money damages would be available as a remedy. *Cf. Jones v. City of Philadelphia*, 890 A.2d 1188, 1208 (Pa.Commw.2006) ("To date, neither Pennsylvania statutory authority nor appellate case law has authorized the award of monetary damages for a violation of the Pennsylvania Constitution."); *see also Hillgartner v. Port Authority of Allegheny County*, 936 A.2d 131, 141 (Pa.Commw.2007) (holding there is no private cause of action for employment discrimination under the Pennsylvania Equal Rights Amendment because, as per *Jones*, parties may not recover money damages for violations of the Pennsylvania Constitution).